**TULSA TRIBUNE COMPANY, an Oklahoma corporation, Appellee,**

v.

**Robert FULTON, Director of Human Services, Department of Human Services, State of Oklahoma, Appellants.**

**TULSA TRIBUNE COMPANY, an Oklahoma corporation, Appellee,**

v.

**OKLAHOMA STATE NURSING HOME ASSOCIATION, INC., Appellant.**

Nos. 61254, 61258.

Supreme Court of Oklahoma.

June 26, 1984.

Rehearing Denied March 27, 1985.

Gable & Gotwals by James M. Sturdivant and John Henry Rule, Tulsa, and Andrews, Davis, Legg, Bixler, Milsten & Murrah by Don G. Holladay, Oklahoma City, for appellee.

Department of Human Services by Thomas H. Tucker and Pamela K. Padley, Oklahoma City, for appellant Dept. of Human Services.

Stipe, Gossett, Stipe, Harper, Estes, McCune & Parks by Gene Stipe and Mitchell A. Lee, McAlester, for appellant Oklahoma State Nursing Home Ass'n, Inc.

HODGES, Justice.

This is an appeal from the issuance of a writ of mandamus directing the Department of Human Services (DHS) to open for public inspection the cost reports filed with DHS by the some 362 nursing homes in Oklahoma participating in the Medicaid program, and certain audit reports prepared by DHS concerning some of those homes. Appellee, the Tulsa Tribune, initially sought to examine those reports and was denied by DHS. When the Tribune sought a writ of mandamus, the Oklahoma State Nursing Home Association, Inc. (Association) intervened. The writ has been stayed pending appeal.

Inspection of these reports and audits was sought by the Tribune under 51 O.S. 1981 § 24.[1] DHA contends that: 1) these

---

1. It is provided by 51 O.S.1981 § 24:
    "It is hereby made the duty of every public official of the State of Oklahoma, and of its subdivisions, who are required by law to keep public records pertaining to their said offices, to keep the same open for public inspection for proper purposes, at proper times and in proper manner, to the citizens and taxpayers of this

reports are not within the ambit of Section 24, 2) the legislature intended information of this nature to be excepted from the operation of this section, and 3) DHS' promise of confidentiality prevents their disclosure. In addition to the objections raised by DHS, Association argues that disclosure would result in revealing of trade secrets, thus depriving it and its members of property without due process.

## I

■ As we stated recently in *Oklahoma City News Broadcasters Association, Inc. v. Nigh* (1984), 683 P.2d 72, the purpose and intent of Section 24, the Open Records Law, is to allow public inspection "for proper purposes" during normal business hours of those records which the law requires public officials to keep and which pertain to their offices. If DHS is not required by law to keep the cost reports and audit reports sought, then they are not subject to mandatory disclosure, as is requested in this case.

■ The cost reports and audits in question were filed with, and maintained by, DHS in fulfillment of its responsibilities under the Federal Medicaid program. Under that program, DHS acts as the review-

ing and disbursing agent for the federal government. In doing so, it must comply with the federal statutes and regulations established by the Secretary of Health, Education, and Welfare.[2] Specific federal regulation required DHS to obtain the cost reports and conduct certain audits.[3] The material sought has been filed with, and kept by, DHS pursuant to the mandate of federal law. The Open Records Law does not specify the source of the "law" which may require the keeping of the records, and we see no reason to believe that the legislature intended to limit the scope of the law to those records required to be kept by state law.

■ Unlike the Governor in the *Oklahoma City News Broadcasters* case, supra, DHS was required by federal law to obtain cost reports from the nursing homes, and to perform certain audits. We hold that such cost reports and audit reports are subject to inspection under the Open Records Law, and they must be disclosed unless they fall within some exception articulated as a part of that law.

## II

DHS argues that, even if the reports would be otherwise covered by the Open

state, and its subdivisions, during all business hours of the day; provided, however, the provisions of this act shall not apply to income tax returns filed with the Oklahoma Tax Commission, or other records required by law to be kept secret."

**2.** It is provided by 42 U.S.C. § 1396:
"For the purpose of enabling each State, as far as practicable under the conditions in such State, to furnish (1) medical assistance on behalf of families with dependent children and of aged, blind, or permanently and totally disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services, and (2) rehabilitation and other services to help such families and individuals attain or retain capability for independence or self-care, there is hereby authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this subchapter. The sums made available under this section shall be used for making payments to States which have submitted, and had approved by the Secretary of Health, Education, and Welfare, State plans for medical assistance."
And Section 1396a(a)(27) provides:

"[P]rovide for agreements with every person or institution providing services under the State plan under which such person or institution agrees (A) to keep such records as are necessary fully to disclose the extent of the services provided to individuals receiving assistance under the State plan, and (B) to furnish the State agency with such information, regarding any payments claimed by such person or institution for providing services under the State plan, as the State agency may from time to time request;"

**3.** It is provided by 42 C.F.R. §§ 447.260, 447.-265:
Section 447.260 Provider cost reporting.
"The agency must provide for the filing of uniform cost reports by each participating provider."
Section 447.265 Audit requirement.
"The agency must provide for periodic audits of the financial and statistical records of participating providers."

Records Law, they are the type of sensitive financial information which the legislature intended to exclude from public scrutiny when it provided: "... the provisions of this act shall not apply to income tax returns filed with the Oklahoma Tax Commission, or other records required by law to be kept secret." [4] DHS admits that these reports are not within the literal language of the exception, but argues they are within its spirit.

■ This is not an ambiguous statute from which we are required to divine some legislative intent. In clear, explicit terms the legislature limited this exception to the general rule of disclosure to tax returns filed with the Tax Commission, and other records made secret by mandate of law. The reports sought by the Tribune are neither tax returns or secret under any proper source of law. We decline to ingrain an additional exception into an unambiguous statute. The reports sought by the Tribune are not exempt from the Open Records Law.

### III

■ DHS argues that it should be allowed to keep its promise that the information contained in the reports would remain confidential. Its assertion that confidentiality was required in order to obtain the reports from the providers is belied by the federal regulations which require such reports if the nursing homes are to receive reimbursement under the Medicaid program. Those regulations contain no promise of confidentiality as a quid pro quo for the filing of the reports. If a nursing home wished to participate in the Medicaid program, it was required to provide the report.

It is fundamental that an agency of state government or its officials cannot bind the state by an act which is in violation of our constitution or state law. *State ex rel. Cartwright v. Dunbar*, 618 P.2d 900 (Okl. 1980). If, as we hold above, the legislature has mandated that these records be available for public inspection, the DHS may not remove them from public view by its "promise".

### IV

The Nursing Home Association joins in the arguments raised by DHS discussed above, but adds one additional assertion in an attempt to set aside the writ issued by the trial court. They argue the cost reports contain valuable "trade secrets," the disclosure of which will result in a deprivation of property.[5]

■ No evidence was presented which demonstrated in what manner disclosure of these reports would result in the revelation of a trade secret, or the injury which would result to the nursing homes providing the reports. Counsel for the Association argued that competitors might glean from the reports some information about a profitable operation which would allow them to compete more effectively for patients, to the detriment of the reporting homes. We do not agree that such a limited, speculative effect constitutes a "taking" of property in the constitutional sense.

Not every destruction or injury to property by government action is a "taking" in the constitutional sense. Whether a taking has occurred depends upon the character of government action, its economic impact and its interference with reasonable investment-backed expectation.[6] Neither proper-

---

**4.** 51 O.S.1981 § 24.

**5.** The Tribune did not dispute at trial or on appeal the right of Association to appear and raise constitutional questions of property rights which apparently belong to its members. However, Association did allege below, without contradiction, that it had a specific property right in the reports which the Tribune sought. Accordingly, we assume that Association has a sufficient interest in the reports to raise ques-

tions of deprivation of property and does not merely assert the constitutional right of its members.

**6.** *Pruneyard Shopping Center v. Robbins,* 447 U.S. 74, 82–83, 100 S.Ct. 2035, 2041–42, 64 L.Ed.2d 741, 753 (1980) quoting *Armstrong v. United States,* 364 U.S. 40, 48, 80 S.Ct. 1563, 1568, 4 L.Ed.2d 1554, 1560 (1960).

ty nor contract rights are absolute. There is a counterbalancing between private rights and that of the public to regulate the right in the public interest. The guaranty of due process demands only that the means utilized have a real and substantial advantage to the targeted objective.[7]

■ We find that public access to the cost reports and audits does not violate either the 5th or 14th amendment. Those who voluntarily choose to participate in a program which is primarily supported by tax dollars cannot reasonably expect the public which funds the program will be denied the right to scrutinize the basis on which the payments are made.

### V.

■ Both appellants argue that, if we determine these reports are subject to disclosure, such a pronouncement should have prospective effect only. As support, they urge that the DHS promise of confidentiality demands such consideration. There is no evidence that any nursing home whose report would be disclosed as a result of our decision did so only because they believed it would remain confidential. Further, having already determined that the DHS could not remove these reports from public view by a promise made in violation of the Open Records Law, we will not render that holding hollow by refusing to apply it to the very cost reports sought in this proceeding and thereby give effect to that promise.

The trial court correctly granted the writ of mandamus. The stay of the writ which we have previously entered is dissolved, and the order of the trial court is affirmed.

STAY OF WRIT OF MANDAMUS DISSOLVED. WRIT OF MANDAMUS ISSUED BY TRIAL COURT AFFIRMED.

All the Justices concur.

---

7. *Prunyard Shopping Center v. Robbins,* note 6, supra, citing *Nebbia v. New York,* 291 U.S. 502, 523–25, 54 S.Ct. 505, 510–11, 78 L.Ed.2d 940, 948–50, 89 A.L.R. 1469 (1934).