**CHARLESGATE NURSING CENTER**

v.

**Nancy V. BORDELEAU, in her capacity as Director of the Department of Human Services.**

**No. 88-256-Appeal.**

Supreme Court of Rhode Island.

Jan. 18, 1990.

Gerald John Petros, Hinckley, Allen, Snyder & Comen, Providence, for plaintiff.

Joel D. Landry, Connors & Kilguss, Providence, amicus curiae.

James E. O'Neil, Atty. Gen., Terence J. Tierney, Sp. Asst. Atty. Gen., Jennifer L. Wood, Hardy & Wood, Pautucket, Reuben Guttman, for defendant.

Before FAY, C.J., and KELLEHER, WEISBERGER, MURRAY and SHEA, JJ.

OPINION

WEISBERGER, Justice.

This case comes before us on the appeal of the plaintiff Charlesgate Nursing Center (Charlesgate) from a judgment entered in the Superior Court in favor of the defendant Nancy V. Bordeleau in her capacity as director of the Department of Human Services (director). We affirm. The facts of the case insofar as pertinent to this appeal are as follows.

Charlesgate is engaged in the business of providing nursing care to patients within the State of Rhode Island. Its facility is licensed by the State pursuant to G.L.1956 (1989 Reenacement) § 23-17-6. For many of its patients Charlesgate receives payment through the medicaid program operated by the director pursuant to G.L.1956 (1984 Reenactment) chapter 8 of title 40.

During the fiscal year 1989 the director has budgeted approximately $118 million to be devoted to the reimbursement of approximately 102 facilities that provide services to medicaid beneficiaries in this state. For the purpose of determining the amount

of reimbursement to be paid to such nursing facilities, all are required to file detailed cost reports with the director. Charlesgate, as a skilled-nursing and intermediate-care facility, participates not only in the state medicaid program but also in the federal medicare program. Both of these programs involve receipt of federal and state reimbursement funds. Both the federal medicare program and the state medicaid program require the filing of cost reports with the designated agency charged with administration of the program. In respect to the medicaid program, a report known as a "BM–64 Report" must be submitted to the director annually. This report, like its federal counterpart, is designed to establish an appropriate reimbursement rate and to document and justify the costs of the program in implementing the services provided. Obviously one of the principal purposes of the report is to determine that both state and federal funds are being properly utilized and devoted to the benefit of the recipients of care under the program.

The instant controversy arose when Local No. 76 of the Service Employees' International Union AFL–CIO (intervener) requested from the director a copy of the report pursuant to G.L.1956 (1984 Reenactment) chapter 2 of title 38, as a public record within the terms of the chapter which was entitled Access to Public Records Act of 1979 (the act). Charlesgate was then involved in a labor dispute with the intervener and sought injunctive relief from the Superior Court and a declaration that its cost report (BM–64) did not constitute a public document. In 1986 and 1987 the Attorney General of the State of Rhode Island rendered advisory opinions to the director indicating that the BM–64 constituted a public record. The later opinion, however, further advised that certain nonpublic information contained in the report regarding personnel should be deleted from the report before it was made available for public distribution.

A justice of the Superior Court issued a temporary restraining order forbidding release of the report, which order was later vacated. Thereafter, a hearing was held on a preliminary injunction, and by agreement of the parties the hearing on the preliminary injunction was consolidated with the trial on the merits. The trial justice determined that plaintiff's BM–64 report, after the deletion of certain nonpublic material, was a public document and, therefore, the intervener or any other interested person was entitled to inspect and copy said record. Judgment in favor of the director was entered accordingly. Charlesgate appealed from that judgment and sought a temporary injunction from this court pending our determination of this appeal. That injunction was granted in order to preserve the subject matter of the controversy. During the pendency of that appeal Local No. 76 Service Employees' International Union AFL–CIO was allowed to intervene in this action and has therefore been referred to as the intervener.

There is no question that a BM–64 report requires a detailed account of all income and expenditures that Charlesgate records in its general ledger and its income statement for a given year. The report includes payroll and payroll tax information, a depreciation schedule, wage and salary expenses, a statement of operations, an interest and indebtedness schedule, and a balance sheet showing a statement of the financial condition of the facility at the close of the reporting year in comparison with the previous year.

It is important to note, however, that the director, in accordance with the advice of the Attorney General and in accordance with her own determination, deleted both the detailed personnel information—which includes job descriptions, hourly and total compensation, and dates of hire and termination, which information would be identifiable to individual employees—and tax returns before making this report available to the public.

In support of its appeal Charlesgate argues that the BM–64 report is not a public record because the act defines it as a private record, and the General Assembly did not intend to provide access to confidential financial documents of no public importance.

We must first respectfully disagree with Charlesgate that the BM–64 report has been defined in the act as a private record. The purpose of the act as set forth in § 38–2–1, clearly discloses that it was the intention of the General Assembly to guarantee the public's right to access to records that pertain to the policy-making responsibilities of government and are relevant to the public health, safety and welfare. We are also mindful that it was the intent of the Legislature to protect from disclosure information about particular individuals whose records are maintained in the files of public bodies when disclosure would constitute an unwarranted invasion of privacy.

It is reasonably clear that the expenditure of $118 million of public funds in a fiscal year is a matter that pertains to the policy-making responsibilities of government. Moreover, since those funds are expended for the furnishing of medical and nursing care to economically disadvantaged individuals, such expenditure is relevant to the public health, safety and welfare. Consequently the public interest in these reports of expenditure and income must be presumed to be both keen and continuous. Other courts, both state and federal, which have considered the public nature of similar reports required by either state or federal law have concluded that the contents of such reports are matters of public interest and that the reports themselves are public documents. *Parkridge Hospital, Inc. v. Califano,* 625 F. 2d 719 (6th Cir. 1980); *St. Joseph's Hospital Health Center v. Blue Cross of Central New York, Inc.,* 489 F.Supp. 1052 (N.D. N.Y.), *aff'd.,* 614 F. 2d 1290 (2nd Cir.1979), *cert. denied,* 445 U.S. 962, 100 S.Ct. 1650, 64 L.Ed.2d 238 (1980); *Craigmont Care Center v. Department of Social Services,* 325 N.W.2d 918 (Iowa Ct.App.1982).

In the foregoing cases, arguments similar to those made by Charlesgate—that these reports are confidential and that their disclosure would give a competitive advantage to other similar institutions—have been rejected.

Charlesgate's brief mentions two portions of the act that exempt certain documents from public disclosure. Section 38–2–2(d)(1), as amended by P.L.1986, ch. 203 § 1, exempts records that are identifiable to an individual and deal with personnel. This exemption is recognized by the director and by the Attorney General and is rendered noncontroversial by the deletion of such information. Charlesgate also points to § 38–2–2(d)(15) which exempts tax returns. The director concedes this exemption and unequivocally states that such material is deleted before making the report public. Consequently the only portions of the report that could arguably be suggested as exempt under the act are not proposed by the director to be disclosed and have not in the past been disclosed.

This would leave only § 38–2–2(d)(2), which exempts trade secrets or commercial or financial information of a privileged or confidential nature. This argument has been considered in respect to other similar reports and rejected. *Doctors Hospital of Sarasota, Inc. v. Califano,* 455 F.Supp. 476 (M.D. Fla.1978). We also reject the argument that the subjective desire for confidentiality on the part of Charlesgate or any similar personal expectation should overcome the public interest in knowing that its tax dollars are being appropriately expended and that its public agencies are properly supervising that expenditure. Although it is primarily the duty of the director to oversee the appropriateness and reasonableness of expenditures pursuant to this program, it was obviously the intent of the Legislature that there be a role for public oversight in order to make certain that both the director and the providers were carrying out their respective obligations. It could only have been such a motivation that caused the State of Rhode Island and the overwhelming majority of the other states to have enacted freedom-of-information laws as well as the Freedom of Information Act adopted by the Congress of the United States. *See The Rake v. Gorodetsky,* 452 A.2d 1144 (R.I.1982). In these days of enhanced public participation in government, it has obviously been a legislative consensus that documents possessed by public bodies in the course of their supervisory activities should generally be

made public unless specifically exempted in the relevant act. We find no such specific exemption here, save for those matters already deleted by the director.

Charlesgate argues that the intervener desires this information and copies of its BM–64 report for its personal advantage in labor negotiations. This may well be true, but if a report is designated as a public document by the General Assembly, it will be made available to members of the public, including media representatives, labor unions, and possibly the merely curious. It is not required in order to have access to a public document that the purposes of the inquiring party be altruistic and beneficial to the reporting entity. In passing such legislation, the General Assembly has presumably determined in its wisdom that the benefits of making such information public outweigh the disadvantage that may accrue to those who have a subjective desire to keep the material private and confidential.

As a consequence we believe that the trial justice was correct in denying both injunctive and declaratory relief to Charlesgate. It did not sustain the heavy burden of proof that its BM–64 report came within a specific exemption set forth in § 38–2–2. *See Minnesota Medical Association v. State,* 274 N.W.2d 84 (Minn.1978).

For the reasons stated, the appeal of Charlesgate is denied and dismissed. The judgment of the Superior Court is affirmed. The injunction heretofore issued by this court is hereby dissolved. The papers in the case may be remanded to the Superior Court.