Dear Mr. Castille:
This office is in receipt of your letter dated May 21, 1992, requesting a formal opinion from this office. The opinion request has been assigned to me for research and reply.
The issue for our review involves the applicability of the Louisiana Public Records Act, LSA-R.S. 44:1, et. seq., to certain documents held by the Department of Health and Hospitals via the department's Medical Assistance Program, hereinafter referred to as the Medicaid Program. You ask specific questions concerning the Department's obligation to release the following information:
 (1) Data routinely collected concerning a provider's business operations;
(2) Patient specific medical data; and
 (3) Information collected by the department for purposes of maintaining program integrity and to detect provider and recipient fraud and abuse.
You also ask:
 (4) Should the Department respond to those requests for the fiscal intermediary to run data in a special way; and
 (5) What are the appropriate time constraints for release of the information.
The general rule of law concerning public access to agency records states all records which are maintained by a public body, such as the Department of Health and Hospitals, may be subject to inspection by the general public pursuant to the provisions of the Public Records Act, LSA-R.S. 44:1, et. seq. There are two exceptions to this general rule of disclosure. First, applicable state and federal statutes may provide exemptions which would prohibit disclosure. Second, the general public may be denied access to the records because of an individual's constitutionally protected right of privacy granted under Louisiana Constitution Art. 1, § 5.
FACTUAL BACKGROUND
The Medicaid Program was established pursuant to Title XIX of the Social Security Act, 42 U.S.C.A. § 1396, et. seq. It establishes a joint federal and state cost-sharing system to provide necessary medical services to indigent persons who otherwise would be unable to afford such care.
Participation in this system by a state is optional. Once a state does decide to participate, it must abide by certain requirements imposed by the Act and regulations promulgated thereunder. To qualify for federal reimbursement, a state must submit to the Secretary for approval a plan for medical assistance. 42 U.S.C.A. § 1396a. This plan "is a comprehensive written statement submitted by the agency describing the nature and scope of its Medicaid program and giving assurance that it will be administered in conformity with the specific requirements of Title XIX, the regulations in Chapter IV [of the Code of Federal Regulations], and other applicable official issuances of the Department."42 C.F.R. § 430.10.
The state is entitled to receive reimbursement from the federal government for a percentage of the funds it pays to health care facilities which provide medical assistance to Medicaid recipients. 42 U.S.C.A. § 1396b. The remainder of the costs under the Medicaid Program are borne by state and local governments. See Pinnacle Nursing Home v. Axelrod, 928 F.2d 1306
(2nd Cir. 1991), at page 1309. Absent compliance with federal regulations by a participating state, the inevitable consequence might well be a collapse of such funding. See Temple University v. White, 941 F.2d 201 (3rd Cir. 1991), at page 214.
In Louisiana, the secretary of the Department of Health and Hospitals is charged with the responsibility for coordination of the delivery of services provided under the Medicaid program. LSA-R.S. 36:251(B). It is further the duty of the secretary of the Department of Health and Hospitals to act as the agent of the state to cooperate with the federal government in the administration of federal funds granted to the state for the funding of the Medicaid program. LSA-R.S. 36:254.
THE PUBLIC RECORDS ACT
Any question involving the confidentiality of certain records held by public agencies necessarily requires an examination of the provisions of the Public Records, Act, LSA-R.S. 44:1, et. seq. The Act defines "public records" as:
 "All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers, . . . having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business . . . performed by or under the authority of the constitution or laws of this state, . . ." LSA-R.S. 44:1(A)(2).
Unless specifically exempted, all records, documents, and information used in the performance of any public function are included. Caple v. Brown, 323 So.2d 217 (La.App. 2nd Cir. 1975). The Public Records Act does not contain a specific exemption relating to the records of the Department of Health and Hospitals. However, there is contained by the Act the following general exclusion:
 "This Chapter shall not apply . . . to any records . . . in the custody or control of any officer, employee, agent or agency of the state whose duties and functions are to investigate, examine, . . . the business of any private persons, . . . when the records . . . pertain to the business of the private person, firm or corporation, and are in their nature confidential." LSA-R.S. 44:4(3); (Emphasis added).
ISSUES ONE AND TWO
Your first two inquiries concern the confidentiality of documentation of a provider's business operations, and patient specific medical data, which is routinely submitted to the Department of Health and Hospitals. The providers are required by state and federal law to file certain financial documentation, in some instances referred to as a "cost report", with the Department of Health and Hospitals. These documents enable the Department to establish reimbursement to the provider and to determine that both state and federal funds are being properly utilized. These filings may include information reflecting a detailed account of income and expenditures of the provider, wage and salary expenses, a statement of operations, a balance sheet showing a statement of financial conditions of the facility, and payroll and payroll tax information.
This office is of the opinion that such documentation filed with the Department of Health and Hospitals is a public record within the ambit of the Louisiana Public Records Act. Although we find no Louisiana jurisprudence directly addressing this issue, we are guided by other recent state court decisions addressing the issue of public access to certain cost reports filed by providers participating in the Medicaid program. In the case of Charlesgate Nursing Center v. Bardeleau, 568 A.2d 775 (R.I. 1990), the Supreme Court of Rhode Island ruled that cost reports submitted to the state agency for determination of Medicaid reimbursement rates were public records and therefore disclosable. The Court stated:
 "It is reasonably clear that the expenditure of $118 million of public funds in a fiscal year is a matter that pertains to the policy-making responsibilities of government. Moreover, since those funds are expended for the furnishing of medical and nursing care to economically disadvantaged individuals, such expenditure is relevant to the public health, safety and welfare. Consequently the public interest in these reports of expenditure and income must be presumed to be both keen and continuous". 568 A.2d at page 777; (Emphasis added).
In the case of Craigmont Care Center v. Department of Social Services, 325 N.W.2d 918 (Iowa App. 1982), the court allowed public examination of cost reports filed by health care facilities. The trial court in Craigmont rejected the argument that these cost reports contain trade secrets or commercial or financial information of a privileged or confidential nature. The appellate court adopted this rationale, stating:
 "We find that the strong public interests discerned by the trial court are indeed legitimate and compel a conclusion that public disclosure of the cost reports is warranted. . . . Given the magnitude of the industry, the number of people it affects, and the tax dollars used to support the industry, the public interest at stake overshadows any advantages that competitors might derive from access to the cost reports". 325 N.W.2d at page 921; (Emphasis added).
In the case of Tulsa Tribune Company v. Fulton, 696 P.2d 497
(Okl. 1984), the Supreme Court of Oklahoma allowed the media access to certain cost reports and audits on nursing homes filed with the state Department of Human Services, pursuant to Oklahoma's open records law. The Court stated:
 "Those who voluntarily choose to participate in a program which is primarily supported by tax dollars cannot reasonably expect the public which funds the program will be denied the right to scrutinize the basis on which the payments are made". 696 P.2d at page 501.
Reference is further made to federal jurisprudence mandating disclosure of cost reports filed by providers participating in the Medicare program, established under Title XVIII of the Social Security Act, 42 U.S.C.A. §§ 1395-1395xx. Regulations have made these cost reports available to any member of the public who requests them in writing. 42 C.F.R. § 401.135. In the case of South Hills Health System v. Bowen, 864 F.2d 1084
(3rd Cir. 1988), the Court rejected the argument that these reports were exempt from disclosure under the Freedom Of Information Act, (FOIA) 5 U.S.C.A. § 552(b)(4). Under this provision, "trade secrets and commercial or financial information obtained from a person and privileged or confidential" are exempt from mandatory disclosure to FOIA requesters. Another court rejected the argument advanced by a provider that the regulation mandating disclosure of medicare provider cost reports contravenes the Trade Secrets Act,18 U.S.C.A. § 1905, which broadly prohibits government disclosure of commercial or financial information. See St. Joseph's Hospital v. Blue Cross, 489 F. Supp. 1052 (N. D. New York 1979).
We are mindful, however, of constitutional concerns regarding an individual's right of privacy. LSA-Const. Art. 1, § 5 states in part:
 "Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable invasions of privacy."
This office has previously opined private citizens can reasonably expect information not otherwise open to inspection to remain unobtainable even though it is received by a public agency. See Attorney General Opinion Number 82-648, a copy of which is attached. Addressing this constitutional expectation of privacy by a private individual, the court in Charlesgate, supra, noted that detailed personnel information — which would include job descriptions, hourly and total compensation, dates of hire and termination, and any other information identifiable to individual employees was appropriately deleted before the cost reports were released. Tax returns were also not released. In light of constitutional concerns, this office is of the opinion that the Department of Health and Hospitals should delete such information before the cost reports are made available for public distribution.
Further, the Freedom of Information Act (FOIA) specifically exempts personnel, medical or "similar" files.5 U.S.C.A. § 552(b)(6). The federal regulations exempt from disclosure that information which would "identify individual patients, individual health care practitioners, or other individuals".42 C.F.R. § 401.126(b)(1). If a prescription number would disclose or have the possibility of disclosing the identity of a recipient, that number cannot be released to the public. Any patient specific medical information must not be released. We also note the provisions of LSA-R.S. 46:56 prohibit the disclosure of case records of clients of the Department of Health and Hospitals except in specifically authorized situations. Protected material defined as "case records" includes "medical services records" under the statute. See LSA-R.S. 46:56(2). Finally, LSA-R.S. 44:4(1) excludes public access to "any tax return or the information contained in any tax return".
In summary, financial documentation submitted by a provider to the agency must be made available to members of the public, after deletion of the information previously mentioned. Patient specific medical data is protected and may not be disclosed.
ISSUE THREE
Your third inquiry concerns the release of information gathered for purposes of maintaining program integrity and preventing provider and recipient fraud and abuse. Complete deference to public access may be curtailed in certain situations. In Title Research Corp. v. Rausch, 433 So.2d 1105 (La.App. 1 Cir. 1988), a balancing test was implemented:
 ". . . the inherent right of the public to be reasonably informed . . . while at the same time balancing this right against the necessity for the custodian of public records to act in the public interest by protecting and preserving the public records against unreasonable dangers of loss or damage, or acts detrimental to the integrity of the public records". 433 So.2d at page 1109; (Emphasis added).
What constitutes information that may threaten such "integrity of the public records" is a question of fact appropriate for judicial determination. It was the intent of the legislature that the public be reasonably informed as to the manner, basis, and reasons which form the basis of government functions. If the disclosure of information used to detect fraud and abuse would erode the program's efficiency and utility, it would seem reasonable to conclude the information should not be released. However, absent a statutory provision exempting such information, this office is of the opinion that the information is subject to disclosure, with the limitations previously mentioned.
ISSUE FOUR
Your fourth inquiry addresses the time constraints placed on the department to present documents where requested material is being used to generate mandatory reports. LSA-R.S. 44:33 states in applicable part:
 "If the public record applied for is immediately available, because of its not being in active use at the time of the application, the public record shall be immediately presented to the authorized person applying for it. If the public record applied for is not immediately available, because of its being in active use at the time of the application, the custodian shall promptly certify this in writing to the applicant, and in his certificate shall fix a day and hour within three days, exclusive of Saturdays, Sundays, and legal public holidays, for the exercise of the right granted by this Chapter.
 The fact that the public records are being audited shall in no case be construed as a reason or justification for a refusal to allow inspection of the records except when the public records are in active use by the auditor." LSA-R.S. 44:33(B)(1) (2); (Emphasis added).
The only limitation stated in the statute is the active use by an auditor. The statute is clear on this sole exception and no other is mentioned. It can be inferred that no other situation would constitute an exception to the three day requirement of availability. Any request submitted to the Department of Health and Hospitals must be responded to within three days, absent the statutory exception.
ISSUE FIVE
Your fifth and final inquiry raises the issue of whether the department has a duty to respond to a request which requires either the department or the fiscal intermediary as agent to sort the data in a special way or run a special report. In Bartels v. Roussel, 303 So.2d 833 (La.App. 1st Cir. 1974), the court stated that the rights of citizens to examine and inspect public documents "must be balanced with the right of public officials and employees to carry on the business of the public without undue interference." 303 So.2d at page 837.
If the sorting or research request is unduly burdensome, then neither the Department of Health and Hospitals nor the fiscal intermediary, as agent and custodian, has to perform this task. LSA-R.S. 44:32 is specific as to the obligations of the custodian responding to a request for examination of public records:
 "The custodian shall present any public record to any person of the age of majority who so requests. The custodian shall make no inquiry of any person who applies for a public record, except in an inquiry as to the age and identification of the person and may require the person to sign a register and shall not review, examine or scrutinize any copy, photograph, or memoranda in the possession of any such person; and shall extend to the person all reasonable comfort and facility for the full exercise of the right granted by this Chapter; provided that nothing herein contained shall prevent the custodian from maintaining such vigilance as is required to prevent alteration of any record while it is being examined; and provided further, that examinations of records under the authority of this Section must be conducted during regular office or working hours, unless the custodian shall authorize examination of records in other than regular office or working hours. In this event the persons designated to represent the custodian during such examination shall be entitled to reasonable compensation to be paid to them by the public body having custody of such record, out of funds provided in advance by the person examining such record in other than regular office or working hours. LSA-R.S. 44:32(A); (Emphasis added).
Nowhere in the statute is it required that the custodian run any extraordinary errand or report beyond the presentation of documents in readily identifiable form. In response to your fifth inquiry, the department and its agent are under the sole obligation to present the documentation for examination and are not required to present the information in a specialized format.
Finally, we note that in cases where "protected" data is merged with data that is subject to release, the Department of Health and Hospital is authorized to edit and delete the protected data prior to release. LSA-R.S. 44:32(B). The Department of Health and Hospitals, as custodian, may charge the requestor fees for production of these copies. LSA-R.S. 44:32(C)(2).
SUMMARY
The documentation submitted by a provider to the Department of Health and Hospitals or its fiscal intermediary is a public record subject to disclosure under the Public Records Act. Any information identifying personnel of the provider, or information identifying patients or recipients must be deleted prior to release. Medical records identifying patients are protected and not subject to disclosure. Protecting the integrity of the Medicaid program is a valid concern and may be allowed consideration under a factual analysis should the issue be presented for judicial review. However, absent a statutory exemption, information gathered for purposes of maintaining program integrity and preventing provider and recipient fraud and abuse is subject to disclosure, with the limitations previously mentioned. All documents must be provided for review within three days unless in actual use by an auditor. In responding to a request for review, the department or fiscal intermediary as its agent need only present the information requested in a readily identifiable form to the inquirer. Fees may be charged the requestor for production of copies.
We hope this interpretation of the law will be helpful to you. Should you require further assistance, please contact our office.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: KERRY L. KILPATRICK Assistant Attorney General
RPI/KLK/ams