DECISION
Richard Fuka, President of the Rhode Island Fisherman's Alliance Inc., ("Fuka") and the Rhode Island Fisherman's Alliance Inc. ("Alliance"), (collectively "Plaintiffs'), ask this Court to order the Rhode Island Department of Environmental Management ("DEM") and W. Michael Sullivan, the Director of the DEM ('sullivan"), (collectively "Defendants'), to release a complete list of names and addresses of all licensed commercial fisherman and dealers currently registered with the DEM. In requesting injunctive relief, they argue that pursuant to G.L. 1956 § 38-2-1 et seq., the Access to Public Records Act ("APRA"), the list of names and addresses is public record and is not protected by any of the enumerated exemptions to public disclosure found in § 38-2-2(4)(i). Defendants object by contending that the addresses are not public record and fit within an exemption, or in the alternative, that the requested information is exempt from public disclosure pursuant to privacy law as interpreted by the Rhode Island Supreme Court. Jurisdiction is pursuant to G.L. § 9-30-1 et seq. and § 38-2-9. *Page 2 
 I Facts and Travel
The Alliance is an organization of commercial fisherman and others supporting common equal access to Rhode Island's marine fisheries, the free exercise of the trade of fishing upon Rhode Island waters, and the conservation and proper use of those food resources. Fuka is the president of the Alliance. The General Assembly has vested in the DEM the power to `supervise and control the protection, development, planning, and utilization of the natural resources of the state." Section 42-17.1-2. Further, the Director of the DEM, Sullivan, is vested with the authority and responsibility over the marine life of the state. Sections 20-1-2, 20-1-5. The Director of the DEM is further charged with the promulgation of rules and regulations deemed necessary to carry out the duties of the DEM. Sections 20-1-4, 20-1-5. Specifically, it is the "duty of the director to adopt, implement . . . and maintain a commercial fisheries licensing system. . . ." Section 20-2.1-9; seealso § 20-2-1. In order to legally maintain and operate a commercial fishing company (either fishing or dealing), one must obtain either the license to fish or deal from the DEM. Sections 20-4-1 (generally),20-2.1-4 (fishing license), 20-2.1-8 (dealers' licenses); seegenerally Rules and Regulations of the Department of Environmental Management for the Division of Fish and Wildlife Governing the Management of Marine Fisheries (thereafter, "Regulations").
Pursuant to DEM's regulations, applicants for any license or permit issued by the DEM must disclose their name, age, occupation, resident address, mailing address, weight, height, hair color, eye color, any previous license revocations in any jurisdiction, and a driver's license with date of issuance. Regulations Rule 6.7-1. This information is required in order to obtain a fishing license, as described in Regulations Rules 6.8 and *Page 3 
6.9, or a dealer license, as described in Regulations Rule 6.11. Without this necessary approval and licensing, it is "unlawful for any person in Rhode Island or the waters of the state . . . to catch, harvest, or to hold or transport for sale . . . any marine finfish, crustacean, or shellfish. . . ." Section 20-2.1-4.
On or about December 26, 2006, Todd Lander, a member and representative of the Alliance, requested a list of all current licensed fisherman and dealers with the DEM in Rhode Island. Specifically, Mr. Lander requested a list of all license holder (fishermen and dealers) categories or types, names, addresses, and all other information on file with the DEM as described above. Further, Mr. Lander requested this information to be transferred in electronic format.
Shortly thereafter, DEM provided a list in hard-copy containing the names of all license holders, individual license codes and numbers, their respective city, state and zip code information. The full street addresses were not provided to the Alliance. A DEM employee later telephoned Mr. Lander to inform him that a complete list, including addresses, could not be provided as requested per the advice of DEM legal counsel. On January 17, 2007, Fuka, in a letter addressed to Sullivan, requested a review of DEM's decision to withhold certain information from the list provided. On February 8, 2007, Sullivan formally responded by letter stating that the DEM had "complied appropriately . . . and that no further records [were necessary to] be provided in order to satisfy the [DEM's] obligation pursuant to [§38-2-3] when balanced against the privacy interests of the licensees." (Complaint Exhibit B.)
Plaintiffs have sued the DEM and its Director, filing their Verified Complaint on February 27, 2007, and later moving for a declaratory judgment and injunctive relief on *Page 4 
March 23, 2007. Plaintiffs argue that the remaining information requested, to wit, the addresses, are part of public record and are not exempt from disclosure as delineated in § 38-2-2(4)(i). Plaintiffs alternatively assert that the DEM has waived its right to deny the information requested due to earlier disclosures by the DEM of the full list, including addresses, on at least two prior occasions.
Defendants timely answered the Verified Complaint and objected to Plaintiff's motion on March 26, 2007. Defendants initially contend that the information requested is not public record, as it falls outside the purview of the definition of public record in § 38-2-2(4)(i). In addition, pursuant to the APRA, as interpreted by the Rhode Island Supreme Court, and by analogy to the federal Freedom of Information Act ("FOIA"), Defendants argue, the addresses of the license holders are exempt from disclosure. Plaintiffs' motion and Defendants' objection are now before the Court.
 II Analysis A. Public Record
In promulgating the APRA, it was the intention of the General Assembly to "enhance the First Amendment right of the public and press to know and have access to information held by various public agencies."Pawtucket Teachers Alliance Local No. 920, AFT, AFL-CIO v. Brady,556 A.2d 556, 558 (R.I. 1989) (citing The Rake v. Gorodetsky, 452 A.2d 1144,1146-47 (R.I. 1982)). The APRA states as its purpose:
 "The public's right to access to public records and the individual's right to dignity and privacy are both recognized to be principles of the utmost importance in a free society. The purpose of this chapter is to facilitate public access to public records. It is also the intent of this chapter to protect from disclosure information about particular individuals maintained in the files of public bodies when disclosure would constitute an unwarranted invasion of personal privacy." Section 38-2-1. *Page 5 
The Rhode Island Supreme Court has long recognized the principle that while "the underlying policy of the APRA favors the free flow and dissemination of information to the public . . . "the Legislature did not intend to empower the press and the public with carte blanche to demand all records held by public agencies."" Direct Action for Rightsand Equality v. Gannon, 713 A.2d 218, 222-23 (R.I. 1998) (quotingProvidence Journal Co. v. Sundlun, 616 A.2d 1131, 1134 (R.I. 1992));Providence Journal Co. v. Kane, 577 A.2d 661, 663 (R.I. 1990). The APRA does not exist so that the public may "rummage through all publicly held documents," as it is structured in order to "limit access to certain documents in order to avoid disclosure of confidential information to protect individuals from invasion of their privacy." Kane,577 A.2d at 663. The Act is "designed to protect from public disclosure information which is highly personal and intimate in nature." Brady,556 A.2d at 559.
This Court must determine whether the requested information not already disclosed by the DEM is public record as defined in § 38-2-1 et seq., the APRA. According to the APRA, a public record is defined as "all documents, papers, letters, maps, books, tapes, photographs, films, sound recordings . . . or other material regardless of physical form or characteristics made or received pursuant to law or ordinance in connection with the transaction of official business by any agency." Section 38-2-2(4)(i). Further, a public record is described as "records maintained or kept on file by any public body, whether or not those records are required by any law or by any rule or regulation." Section38-2-3(a). The APRA specifically exempts the following:
 "All records which are identifiable to an individual applicant for benefits, client, patient, student, or employee, including, but not limited to, personnel, medical treatment, welfare, employment security, pupil records, *Page 6 
all records relating to a client/attorney relationship and to a doctor/patient relationship, and all personal or medical information relating to an individual in any files, including information relating to medical or psychological facts, personal finances, welfare, employment security, student performance, or information in personnel files maintained to hire, evaluate, promote, or discipline any employee of a public body; provided, however, with respect to employees, the name, gross salary, salary range, total cost of paid fringe benefits, gross amount received in overtime, and other remuneration in addition to salary, job title, job description, dates of employment and positions held with the state or municipality, work location, business telephone number, the city or town of residence, and date of termination shall be public." Section 38-2-2(4)(i)(A)(I).
In addition, § 38-2-2(4)(i) also lists over twenty other specific exemptions from the above definition of a public record. Those records include, for example, trade secrets or financial information, child custody and adoption records, some documents related to labor and collective bargaining disputes, portions or personnel files and law enforcement records, and any records that would not be available through a court order. Section 38-2-2(4)(i). The extensive list of exemptions evidences the General Assembly's intent to "protect individuals from unwarranted invasions of privacy and to avoid the disclosure of confidential information. . . ." Brady, 556 A.2d at 558.
In the instant matter, the DEM's initial argument is that the home address information of the license holders falls outside the APRA's definition of public record. (Defs' Mem. 3-4.) Under the APRA, the DEM has the burden to prove that the information requested can be properly withheld from public inspection. Section 38-2-10. In withholding such information, the DEM contends that the licenses granted to the fishermen and dealers are "benefits" under § 38-2-2(4)(i), which specifically exempts from public record "[a]ll records which are identifiable to an individual applicant for benefits." Section 38-2-2(4)(i). While the DEM can cite no authority granting such protection to the information on file for these licenses, it relies on Black's Law *Page 7 Dictionary, for the definition of "benefit" as "1. Advantage; privilege. 2. Profit or gain." (Defs' Mem. 4.) The DEM cites no case or statute to support its conclusion that the licenses granted in this matter are benefits under the APRA.
This Court encountered a similar argument in Providence Journal Co. v.Pine, No. 96-6274, 1998 R.I. Super. LEXIS 86 (June 24, 1998). There, the public body involved contended that a gun permit was a "benefit" under § 38-2-2(4)(i), and therefore, the records on file pertaining to those permits were not public record. Id. at *17-22. In Pine, the Court clarified that whether the permit or license was adjudicated a privilege, grant, vested right, or entitlement did not automatically classify it as a "benefit" under the APRA. Id. In that case, the Court highlighted the fact that not even a driver's license could be considered a "benefit" under the APRA, as the information given in that application is routinely made public. Id. at *20-21. The Court held that because the entitlement of a driver's license is often given more protection than a gun permit and yet is not a "benefit" under the APRA, then a gun permit could not rise to the level of a "benefit."
Similarly, here, the General Assembly did not intend to give more protection to DEM license holders than that afforded to driver's license records. Further, this Court notes the doctrine of `noscitur a sociis,'[1] where "the meaning of questionable or doubtful words or phrases in a statute may be ascertained by reference to the meaning of other words or phrases associated with it." Wigginton v.Centracchio, 787 A.2d 1151, 1155 (R.I. 2001) (citations omitted). Here, the word "benefit" and phrase "applicant for benefit" are surrounded by references to client, patient, medical, welfare, and *Page 8 
employment security records. It is likely that the General Assembly intended the word "benefit" to relate to those benefits granted by the state in the form of aid, as enumerated in the statute, rather than licenses granted by the DEM as in this case.
Based on the foregoing, the records requested in this case must be considered public records. The information associated with the licenses granted by the DEM does not fit into any of the enumerated exemptions in § 38-2-2(4)(i), and the licenses are not "benefits," as contemplated by the APRA. The requested information are documents "received pursuant to law or ordinance in connection with the transaction of official business" by the DEM. Section 38-2-2(4)(i). Further, the information is "maintained and kept on file" by the DEM. Section 38-2-3(a). However, this determination does not totally address the public disclosure issue presented to this Court. Once this Court determines that the records are public, it must then apply a balancing test to further determine whether the records should be released. Kane, 577 A.2d at 663-64.
 B. Waiver of Non-Disclosure
Before doing so, however, this Court will address Plaintiffs' argument that since the DEM has previously disseminated the same information, to wit, the addresses, the agency has waived its ability to withhold the same information from them. The United States Supreme Court recognizes the existence of the privacy interest in some information even where the information may have been public at some earlier time. United StatesDepartment of Justice v. Reporters Committee for the Freedom of thePress, 489 U.S. 749, 767 (1989). Information that is considered to be private does not lose that status or character just by being placed in the public domain at one time. *Page 9 Halloran v. Veterans Admin., 874 F.2d 315, 322 (5th Cir. 1989);Globe Newspaper v. Police Commissioner of Boston, 648 N.E.2d 419, 426
(Mass. 1995).
At oral argument, the DEM stipulated to two previous occasions where essentially the same information sought in this case was dispersed. In the first instance, the DEM gave the addresses to a professor at the University of Rhode Island, allegedly to assist in the completion of a study endorsed by the DEM. At some other time, the DEM revealed the addresses of the licensees to the owner and editor of a local magazine. At oral argument, the DEM admitted it was a mistake in judgment on behalf of the DEM to furnish the information to the magazine editor, and contended that if faced with the same or similar request now, the DEM would decline. In the opinion of this Court, the previous disclosures have no bearing on the level of privacy normally associated with the licensees' home addresses. Simply because the DEM has previously released this information does not strip the licensees of the privacy protections normally afforded to such information. ReportersCommittee, 489 U.S. at 767; Halloran v. Veterans Admin, 874 F.2d at 322;Globe Newspaper, 648 N.E.2d at 419.
 C. Balancing Test
When the General Assembly enacted the APRA, it did so with the intention of limiting "access to certain documents in order to avoid disclosure of confidential information to protect individuals from invasion of their privacy." Kane, 577 A.2d at 663. If this Court finds that the record does not fit the statutory definition of "public record," or if the record falls into one of the numerous exemptions to public disclosure, then "[t]here is no public interest to be weighed in the disclosure," as determined by the General Assembly. Id. Therefore, "any balancing of interests arises only after" this *Page 10 
Court determines the record is public and not exempt. Id. Kane
established a balancing test whereby records that are public by definition may still be withheld when the associated privacy interests outweigh the public's interest in disclosure. In re New Eng. GasCo., 842 A.2d 545, 449-551 (R.I. 2004); see also Kane,577 A.2d at 663-64.
The federal courts have long since adopted the balancing test referenced in Kane, employing a test very similar to the common law privacy test. Reporters Committee, 489 U.S. at 772. Further, the General Assembly created the APRA using the federal Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as a model. Brady, 556 A.2d at 558 n. 3;Kane, 577 A.2d at 664. As such, this Court will apply a similar construction to the APRA and employ the balancing test used pursuant to the FOIA. Laliberte v. Providence Redevelopment Agency, 109 R.I. 565,575, 288 A.2d 502, 508 (1972).
As noted above, the public has a clear right to the disclosure of public records. The plain language of the APRA, especially that in § 38-2-1, "clearly discloses that it was the intention of the General Assembly to guarantee the public's right to access to [sic] records that pertain to the policy-making responsibilities of government and are relevant to the public health, safety and welfare." Charlesgate NursingCenter v. Bordeleau, 568 A.2d 775, 777 (R.I. 1990). "Generally, the APRA was intended to open up various state government documents to inspection by private citizens and news-gathering entities in order to enhance the free flow of information." Hydron Laboratories, Inc. v. Department ofthe Attorney General, 492 A.2d 135, 137 (R.I. 1985). Under the analogous FOIA,
 "[w]hether disclosure of a private document . . . is warranted must turn on the nature of the requested document and its relationship to the basic purpose of the [FOIA] to open agency action to the light of public scrutiny' . . . . Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose. . . . That purpose, however, is not fostered by disclosure of *Page 11 
information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct. . . . [T]he FOIA's central purpose is to ensure that the Government's activities be opened to the sharp eye of public scrutiny, not that information about private citizens that happens to be in the warehouse of the Government be so disclosed. . . . [A] third party's request for . . . records or information about a private citizen can reasonably be expected to invade that citizen's privacy, and that when the request seeks no `official information' about a government agency, but merely records that the Government happened to be storing, the invasion of privacy is unwarranted." Reporters Committee, 489 U.S. at 772-780 (citations omitted) (emphasis in original).
In the instant matter, the Alliance seeks the addresses of the licensees so that it can place them on a mailing list and create a support network of other licensees. At oral argument, the Alliance alleged that the compilation of the addresses will allow it to inform the licensees of new regulations or laws, and provide an avenue to challenge them. Rhode Island law is clear that the sole public interest in disclosure under the APRA is allowing the public to have access to the inner-workings of government agencies. Charlesgate, 568 A.2d at 777. Further, under the FOIA, disclosure is used to `shed light" on government agency activity through the request of "official information." Reporters Committee, 489 U.S. at 772-780. The records disclosed reveal an agency's actions relative to its statutory obligations. Id. Here, the list of addresses of the licensees on file with the DEM will provide little or no insight into the performance of the DEM. While the request for documents pertaining to how the DEM regulates the licenses or meeting minutes relative to a rejected application may fit within the public's right to know under the APRA, certainly a mere list of addresses does not open the DEM to the public scrutiny as contemplated by this balancing test. Id.
Turning to the other half of the balancing test, the privacy interests involved in the information sought are enough to outweigh the public's right to know, thereby keeping *Page 12 
the information confidential. In re New Eng. Gas Co., 842 A.2d at 557;Kane, 577 A.2d at 663-64. The basic tenet of the privacy prong of the balancing test is that "it was the intent of the Legislature to protect from disclosure information about particular individuals whose records are maintained in the files of public bodies when disclosure would constitute an unwarranted invasion of privacy." Charlesgate,568 A.2d at 777. Other jurisdictions have discussed in detail the factors courts should consider when gauging the privacy interest in a particular matter. The Supreme Judicial Court of Massachusetts directs this Court to the following three considerations: "whether disclosure would result in personal embarrassment to an individual of normal sensibilities; whether the materials sought contain intimate details of a highly personal nature; and whether the same information is available from other sources." Globe Newspaper, 648 N.E.2d at 425. In Southern NewJersey Newspapers, Inc. v. The Township of Mount Laurel, 660 A.2d 1173
(N.J. 1995), the Supreme Court of New Jersey recommended several factors to consider when conducting the balancing test:
 "(1) the extent to which disclosure will impede agency functions by discouraging citizens from providing information to the government; (2) the effect disclosure may have upon persons who have given such information, and whether they did so in reliance that their identities would not be disclosed; (3) the extent to which agency self-evaluation, program improvement, or other decisionmaking will be chilled by disclosure; (4) the degree to which the information sought includes factual data as opposed to evaluative reports of policy-makers; (5) whether any findings of public misconduct have been sufficiently corrected by remedial measures instituted by the investigative agency; and (6) whether any agency disciplinary or investigatory proceedings have arisen that may circumscribe the individual's need for the materials." Id. at 1182.
In this case, Plaintiffs seek to gain access to the DEM's license registry in order to acquire, among other things, the addresses of all licensed fishermen and dealers, and the DEM has provided only the names, cites or towns, and zip codes of these licensees. *Page 13 
These fishermen and dealers did not submit applications containing their addresses with the understanding that the DEM would publish them to interest groups such as the Alliance. Globe, 648 N.E.2d at 425. In fact, due to the laws and regulations of Rhode Island, the licensees are compelled to give this information in order to maintain their livelihood. Further, "[t]he privacy interest of an individual in avoiding the unlimited disclosure of his or her name and address is significant." Nat'l Ass'n of Retired Federal Employees v. Horner,879 F.2d 873, 875 (D.C. Cir. 1989). Persons such as the licensees in this case have a significant and substantial privacy interest in their home addresses. Federal Labor Relations Auth. v. U.S. Dep"t of Navy, NavalCommunications Unit Cutler, 941 F.2d 49, 51 (1st Cir. 1991); see alsoReporter's Committee, 489 U.S. at 767. While they may differ, "[m]ost courts have held . . . [that] a discernable interest exists in the ability to retreat to the seclusion of one's home and to avoid enforced disclosure of one's address. . . . [T]his interest is . . . real enough to be worthy of recognition and protection in appropriate circumstances." U.S. Dep"t of Navy, 941 F.2d at 55-56.
Further, the knowledge that the DEM is going to reveal this information to anyone who requests it could have a chilling effect on the fishing industry and relationship between the DEM and the licensees.Southern New Jersey Newspapers, 660 A.2d at 1182. The disclosure of their home addresses could have a substantial negative impact on the individual licensees, bringing unwanted attention to their homes and families. Id. Additionally, there has been no evidence that any licensee desires to be a part of the Alliance, or even that they want to be contacted by the Alliance. It would be one thing for this Court to allow the Alliance to access the licensees' business, but it would be something else altogether to allow the Alliance entrance to their homes. *Page 14 
Even if this Court were to assume arguendo that the licensees' privacy interests were not strong, the purpose of this request for public disclosure is inconsistent with the principles underlying statutes like the APRA and FOIA. Plaintiffs direct this Court to footnote 12 inUnited States Dept. of State v. Ray, 502 U.S. 164, 176 (1997) for the proposition that "disclosure of a list of names and other identifying information is [not always] inherently . . . a significant threat to [the individual's] privacy. . . ." Id. at 176 n. 12. The United States Supreme Court, however, notes that "whether disclosure of a list of names is a `significant or de minimis threat depends upon the characteristic(s) revealed by virtue of being on the particular list, and the consequences likely to ensue."" Id. (Citation omitted.) (Emphasis in original.) Essentially, the United States Supreme Court recognizes the need for a case-by-case determination of the strengths and weaknesses of both the public and private interests involved. Here, not only is there strong privacy interest against the involuntary disclosure of one's home address, but the Alliance has failed to announce a sufficient public interest which would suffice to overcome the licensees' right to privacy.
In a more recent case, the United States Supreme Court rejected a bid by an association similar in purpose to the Alliance to obtain a mailing list, pursuant to the FOIA, maintained by a federal government agency.Bibles v. Oregon Natural Desert Ass'n, 519 U.S. 355, 355-56 (1997). There, the Oregon Natural Desert Association ("ONDA") sought disclosure of a mailing list in the custody and care of the Bureau of Land Management ("Bureau") in order to reach out to those persons on the list with an alternative message to that which the Bureau offered.Id. The Bureau used the mailing list to disperse a newsletter informing those persons about plans and activities affecting *Page 15 
the Oregon desert, while the ONDA wished to disseminate information concerning the same topic, but from a different viewpoint. Id. The United States Supreme Court rejected the information request and noted the rule from Dept. of Defense v. FLRA, 510 U.S. 487, 497 (1994), where it stated, "the only relevant public interest in the FOIA balancing analysis" is "the extent to which disclosure of the information sought would `she[d] light on an agency's performance of its statutory duties" or otherwise let citizens know `what their government is up to.'"Bibles, 519 U.S. at 355-56 (quoting FLRA, 510 U.S. at 497 (citation omitted) (emphasis added)). In the instant matter, just as inBibles, the purpose for which the requested information is made does not comport with the only rationale for disclosing government records. As stated earlier, a list containing the names and addresses of all of the DEM's licensees does not provide any insight into the inner-workings of the DEM.
Upon balancing the public and private interests involved in this case, this Court finds that the home addresses of the licensees should not be disclosed by the DEM. The Alliance has not demonstrated to this Court a compelling public right to know these addresses. On the other hand, this Court has found there is a strong private interest in the non-disclosure. It should be noted that the Alliance has several options available to it if it wished to pursue the acquisition of the addresses. The DEM has already provided a significant amount of information to the Alliance — including the names, cities or towns, and zip codes of the licensees — which the Alliance can now use in order to obtain the addresses without DEM assistance. This Court finds that despite a showing that the licensee list is "public record" under § 38-2-2, the DEM has sustained its burden by showing a stronger privacy interest over and above the public's right to know in this case. *Page 16 
Alternatively, the Alliance, calling upon this Court's jurisdiction pursuant to §§ 38-2-8 and 38-2-9, has not shown that it is entitled to injunctive or declaratory relief. Accordingly, in light of the balancing test elucidated above, this Court denies Plaintiffs' request for an order mandating the release of the home addresses of the licensees from DEM records.
 Conclusion
After reviewing the evidence and the memoranda submitted by the parties, this Court denies Plaintiffs' request for a declaratory judgment and injunctive relief pursuant to § 38-2-1 et seq. Accordingly, Plaintiffs' complaint is dismissed, and judgment shall enter for the Defendants. Counsel shall submit an Order consistent with this Decision.
[1] The phrase literally translates from Latin to "it is known by its associates." Allstate Insurance Co. v. Russo, 641 A.2d 1304, 1307 (R.I. 1994). *Page 1