492 A.2d 135 (1985)
HYDRON LABORATORIES, INC.
v.
The DEPARTMENT OF ATTORNEY GENERAL for the STATE of Rhode Island et al.
No. 82-504-Appeal.
Supreme Court of Rhode Island.
May 7, 1985.
David Oliveira, Providence, for plaintiff.
Dennis J. Roberts II, Atty. Gen., Daniel J. Schatz, Asst. Atty. Gen., for defendant.

OPINION
WEISBERGER, Justice.
This case comes before us on appeal brought by the plaintiff from a judgment entered in the Superior Court granting the defendants' motion for summary judgment. We affirm the judgment of the Superior *136 Court. The facts in this case are as follows.
Originally, Hydron Laboratories, Inc., was charged by the state with contributing to the dumping of noxious materials on a dump site operated by the Picillo family. See Wood v. Picillo, ___ R.I. ___, 443 A.2d 1244 (1982). On February 17, 1982, plaintiff, Hydron Laboratories, Inc. (Hydron), filed a request for documents with the Department of the Attorney General (DAG) pursuant to the Access to Public Records Act (APRA). G.L. 1956 (1984 Reenactment) chapter 2 of title 38.[1] The information sought by Hydron included documents and other information held by both DAG and the Department of Environmental Management (DEM)[2] relating to the Picillo waste-disposal site in Coventry, Rhode Island. The DAG responded to Hydron's request in letters dated March 3 and March 12, 1982, stating that it would comply with Hydron's request to the extent that the documents requested fell within the scope of discovery allowed by the Superior Court Rules of Civil Procedure. More specifically, documents would be produced in accordance with discovery procedures outlined in Rule 34, subject to the limitations imposed by Rule 26(b). The DAG then stated, in the March 3, 1982 letter, that it would not produce "documents obtained or produced by the staff of the Department of Attorney General as a result of inquiries or investigations * * * into the subject matter" of other pending civil litigation between the plaintiff and the defendant in Wood v. Picillo, supra. The DAG's justification for using Superior Court Rules of Civil Procedure 34 and 26(b) as the measure by which to determine the documents that would be produced was that these rules of court governed the other pending civil litigation between the plaintiff and the defendant, and should be read in conjunction with §§ 38-2-2(d) and -2(d)(5) of APRA,[3] thereby permitting DAG's noncompliance with portions of Hydron's request.
On March 26, 1982, Hydron filed a request for production of documents in Picillo, supra, pursuant to Rule 34 of the Superior Court Rules of Civil Procedure. Hydron subsequently filed a motion to compel production of the documents it had requested under Rule 34, and in opposition, DAG filed a motion for a protective order on April 19, 1982, claiming that the documents requested were "privileged" and therefore nondiscoverable. In an order issued April 30, 1982, the Superior Court held, regarding both the motion to compel and the motion for protective order, that W. Edward Wood, director of DEM,
"shall not be required to divulge the content of any written and oral communication between the Department of Environmental Management and the following companies * * *.
"Accordingly Hydron Laboratories' Motion to Compel Production of all documents, correspondence, financial records, inter-office memoranda and corporate records which refer to, or in any way concern oral conversation had between *137 plaintiff and the above companies is denied."
Prior to the issuance of that order, Hydron pursued its APRA request in letters dated April 21 and 22, 1982, and addressed to DAG. In that correspondence, Hydron requested "a review of the determinations made by [DAG] in denying [Hydron's] request." In a response dated May 3, 1982, the chief legal counsel of DEM's Office of Legal Services upheld the DAG's refusal and stated that
"[s]ince the documents and other material which you request are the subject of discovery proceedings * * * involving litigation between [Hydron] and this Department, the documents and material that you request appear to be exempted from the access provisions of R.I.G.L. Chapter 38-2."
Hydron, on May 11, 1982, filed its complaint in this action seeking declaratory and injunctive relief, ordering that the information requested by Hydron under APRA be disclosed. In response, DAG filed an answer and counterclaim on June 3, 1982. In its counterclaim, DAG petitioned the Superior Court to enjoin Hydron from seeking disclosure of the requested information save through discovery procedures in the pending action, Picillo, supra. The DAG further pointed out that the Superior Court in that action had previously issued a protective order in respect to such information on April 30, 1982. Subsequently, DAG moved to adjudge Hydron in contempt for violation of this protective order. The DAG based its petition on the fact that the Superior Court's order denying Hydron's discovery of certain documents would place those documents within the parameters of exemption 5 of § 38-2-2(d) of APRA. Therefore, it alleged Hydron's further attempts at discovery of those documents violated the court order and constituted contempt of court.
On August 31, 1982, a Superior Court justice heard argument on DAG's motion for summary judgment against Hydron and held that the motion to adjudge Hydron in contempt was denied but that DAG's motion for summary judgment was granted. From the judgment rendered September 2, 1982, pursuant to the trial justice's decision, Hydron filed a timely appeal.
In 1979, the Rhode Island Legislature enacted the Access to Public Records Act, chapter 2 of title 38. Generally, APRA was intended to open up various state government documents to inspection by private citizens and news-gathering entities in order to enhance the free flow of information. More specifically, § 38-2-1 of APRA states that,
"[t]he purpose of this chapter is to facilitate public access to governmental records which pertain to the policy-making functions of public bodies and/or are relevant to the public health, safety, and welfare."
Although § 38-2-3 of APRA states that "all records maintained or kept on file by any public body * * * shall be public records and every person shall have the right to inspect and/or copy such records," certain definitional limitations were included in respect to which documents would constitute "public records" and would therefore be readily disclosed. The twenty-one categories of limitations are set forth in § 38-2-2(d)[4] of APRA and are intended to protect the privacy of individuals from unwarranted invasions, § 38-2-1, and to avoid the disclosure of confidential or potentially harmful information. At issue here is exemption 5, § 38-2-2(d)(5), which exempts from the definition of the term "public record" any records that "would *138 not be available by law or rule of court to an opposing party in litigation." It is the scope of this particular exemption with which we are concerned in this case.
The issue in this case of interpreting the scope of exemption 5 of § 38-2-2(d) of APRA is one of first impression. Although statutes are generally to be construed by the courts in a way that furthers the intent of the Legislature, The Rake v. Gorodetsky, ___ R.I. ___, ___, 452 A.2d 1144, 1147 (1982); Berthiaume v. School Committee of Woonsocket, 121 R.I. 243, 397 A.2d 889 (1979), little guidance has been given regarding exemption 5 apart from the statement of general purpose in § 38-2-1. With the general purpose in mind of permitting disclosure without sacrificing the values protected by statutory exemptions, we look to the plain words of exemption 5.
Exemption 5 prohibits the disclosure of public records that would be unavailable by law and "rule of court" to an opposing litigant. In respect to this particular case, Rules 34 and 26(b)(2) of the Superior Court Rules of Civil Procedure set forth basic guidelines for the production of documents in civil litigation.[5] Regarding the content of documents requested under Rule 34, Rule 26(b)(2) specifies categories of documents that are either absolutely privileged (for example, attorney's mental impressions, production of which cannot be compelled) or qualifiedly privileged. In this second category, Rule 26(b)(2) places a qualified privilege on documents by stating that
"[a] party shall not require a deponent to produce or submit for inspection any writing obtained or prepared by the adverse party, his attorney, surety, indemnitor, or agent in anticipation of litigation and in preparation for trial * * *."
Production of these writings that constitutes "work product" may be compelled only upon a showing of "injustice or undue hardship." Rule 26(b)(2). See Pennsylvania General Insurance Co. v. Becton, ___ R.I. ___, ___, 475 A.2d 1032, 1036 (1984); Fireman's Fund Insurance Co. v. McAlpine, 120 R.I. 744, 747, 391 A.2d 84, 87 (1978); Town of North Kingstown v. Ashley, 118 R.I. 505, 510, 374 A.2d 1033, 1036 (1977).
In the case at bar, Hydron filed two document requests with DAG requesting information regarding the involvement of several companies in the dumping of drums containing chemicals at the Picillo waste-disposal site. The first of these requests was made on February 17, 1982, pursuant to APRA. In its response to this request, DAG stated that the documents requested related to litigation between the State of Rhode Island and Hydron in the Picillo case and that under exemption 5 of § 38-2-2(d) of APRA, DAG would not produce those "documents obtained or produced by the staff of the Department of Attorney General as a result of inquiries or investigations * * * into the subject matter of th[e] litigation." The second document request was filed by Hydron on March 26, 1982, pursuant to Rule 34. In response to that request, DAG filed a motion for protective order with the Superior Court asserting that the documents requested by Hydron under Rule 34 constituted privileged information. The Superior Court granted the protective order on April 28, 1982, and thereby quashed production of correspondence, records, and memoranda between DEM and various companies, which documents had been generated as a result of the pending Picillo litigation. Hydron then filed its complaint in this case seeking injunctive and declaratory relief, *139 ordering that the information Hydron had requested under APRA be disclosed.
The issue raised by Hydron in its brief is whether the standard of production would be identical under Rule 34 and under the pertinent provision of APRA. Hydron contends that it is not; that the limitations placed on the scope of Rule 34 discovery do not apply to discovery under APRA. We do not agree.
APRA was not designed to provide an alternative method of discovery for litigants. The Superior Court Rules of Civil Procedure provide for litigation discovery and place appropriate limitations on the scope of that discovery. APRA, on the other hand, was primarily designed to provide for production of documents by members of the public, including the press, who seek access to government documents that are not subject to one of the twenty-one exemptions under § 38-2-2(d). It was never the Legislature's intent to give litigants a greater right of access to documents through APRA than those very same litigants would have under the rules of civil procedure. Therefore, exemption 5 of APRA was enacted to limit production under APRA to the scope of production allowed in pending litigation. Because of the Superior Court's issuance of the protective order recognizing a qualified privilege in DAG not to be compelled to disclose its work product to an opposing litigant, Hydron's request under APRA is limited to those documents found not to be privileged.
Additionally, because the work-product privilege asserted here, that the documents were created in anticipation of litigation, is a qualified privilege under Rule 26(b)(2), Hydron asserts that exemption 5 of APRA does not apply. Hydron's claim, as stated in both its argument before the trial justice on August 31, 1982, and its brief to this court, is that exemption 5 was intended to exclude from production only documents that could never be produced in litigation, that is, documents absolutely privileged. Therefore, since the documents at issue here were protected only under a qualified privilege, they were correctly subjected to the protective order issued pursuant to Rules 34 and 26(b)(2), but they were not subject to nondisclosure under APRA's exemption 5. We do not agree with this contention.
Exemption 5 does not state that it is to apply only to documents that could never be produced in litigation because they are absolutely privileged. It states, rather, that it applies to documents that "would not be available by * * * rule of court." In this case the documents were found to be subject to the work-product privilege under definitions set forth in Rule 26(b)(2). They were therefore no less subject to the application of a rule of court than they would have been had they been found to be absolutely privileged.
Although the exemptions listed under § 38-2-2(d) of APRA should usually be construed narrowly so as to further the legislative purpose of facilitating public access to governmental records, § 38-2-2(d)(5) is broad enough in scope to include both qualifiedly and absolutely privileged documents within the exemption. As long as the court in which litigation is ongoing has made a determination, based on the law or upon rules of court, that a document will not be required to be disclosed, then that holding precludes production of those same documents under APRA through application of exemption 5.
Further, the doctrine of collateral estoppel requires that an issue should be litigated and determined only once. Silva v. Silva, 122 R.I. 178, 184, 404 A.2d 829, 832 (1979). Here, the parties appeared before a justice of the Superior Court who determined that the documents were part of the work-product privilege and therefore nondiscoverable under Rule 34. This determination by the Superior Court should not be subject to relitigation between the same parties in the Superior Court on the basis of another statutory framework. An examination of APRA discloses that the Legislature exhibited no such intent.
*140 Had Hydron believed that the ordinary route of appeal subsequent to entry of judgment in Picillo, supra, was inadequate in order to challenge the court's ruling as to qualified privilege, it could have petitioned this court for review by certiorari of that interlocutory order. This Hydron did not do. Should Hydron be aggrieved by the ultimate judgment of the Superior Court in Picillo, supra, appellate relief will still be available in respect to all orders made during or prior to trial to which objection was preserved. In any event, in the posture in which this case is presented, the Superior Court's protective order precluded Hydron from seeking the documents under APRA. Consequently, no factual issue was raised by Hydron's complaint, and defendants were entitled to judgment as a matter of law. Therefore, summary judgment was properly entered.
For the reasons stated, Hydron's appeal is denied and dismissed. The judgment of the Superior Court is affirmed. The papers in the case may be remanded to the Superior Court.
NOTES
[1] This citation is to the current version of the statute. The act was originally enacted by P.L. 1979, ch. 202, § 1.
[2] Although the DAG and DEM are separate departments of the Rhode Island state government, litigation matters for both departments are handled by the DAG. Although the original requests for documents made by Hydron went to each department separately, the nondisclosure of various documents because of the ongoing litigation was authorized by DAG. For this reason, DAG and DEM will be referred to collectively as DAG throughout this opinion.
[3] General Laws 1956 (1984 Reenactment) §§ 38-2-2(d) and -2(d)(5) state in pertinent part:

"(d) `Public record' or `Public records' shall mean all documents * * * made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency. For the purposes of this chapter, the following records shall not be deemed public:
* * * * * *
"(5) Any records which would not be available by law or rule of court to an opposing party in litigation."
[4] Section 38-2-2(d) states in pertinent part:

"(d) `Public record' or `Public records' shall mean all documents, papers, letters, maps, books, tapes, photographs, films, sound recordings, or other material regardless of physical form or characteristics made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency. For the purposes of this chapter, the following records shall not be deemed public."
Thereafter are listed twenty-one exemptions, including § 38-2-2(d)(5).
[5] Rule 34(a) of the Superior Court Rules of Civil Procedure states in pertinent part:

"[A]ny party may serve on any other party a request (1) to produce and permit the party making the request * * * to inspect and copy, any designated documents * * * or to inspect and copy, test, or sample any tangible thing which constitutes or contains matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served * * *."