PROVIDENCE JOURNAL
COMPANY et al.

v.

Bruce G. SUNDLUN et al.

No. 91–430–Appeal.

Supreme Court of Rhode Island.

Nov. 25, 1992.

Michael P. DiBiase, Joseph Cavanagh, Jr., and Karen Pelazarski, Blish & Cavanagh, Providence, for petitioner.

Gerard P. Cobleigh, Cobleigh, Sprague & Giacobbe, Warwick, Jean Rosiello, Terrence Tierney, Asst. Atty. Gen., Sheldon Whitehouse, and Judith Savage, Office of the Governor, Providence, for respondent.

## OPINION

**WEISBERGER, Justice.**

This case comes before us on the defendants' appeal from summary judgment entered in favor of the plaintiffs by a justice of the Superior Court. In this suit for the disclosure of certain records under the Access to Public Records Act, G.L.1956 (1990 Reenactment) chapter 2 of title 38 (APRA), the trial justice found that there was no genuine issue of material fact concerning whether the records in question were subject to disclosure under the APRA and ordered the defendants to release the documents. We vacate the judgment and remand the case to the Superior Court with directions to modify the original judgment. The facts insofar as pertinent to this appeal are as follows.

On or about March 1, 1991, the Providence Journal Company and Russell Garland, a staff reporter (plaintiffs), made an oral request of Bruce G. Sundlun, in his capacity as Governor, to allow them access to certain state-government records. The records in question would have revealed the "names and positions of the 129 nonunion state employees who were being laid-off." Thereafter, on or about March 5, 1991, plaintiffs made a second oral request for the "names and positions of the 492 state employees who were members of a union and who were being laid-off." On both occasions the Governor refused to give plaintiffs access to the records showing the employees selected for the proposed layoff (the requested records).

On March 6, 1991, plaintiffs filed a complaint in the Superior Court against the Governor and the State of Rhode Island (defendants), alleging that defendants' refusal to make the requested records available for inspection was a violation of the APRA. The plaintiffs' complaint sought a declaratory judgment that the requested records were public documents and, therefore, not exempt from disclosure under the act. In response, defendants moved to dismiss the action pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure. The plaintiffs then filed a motion for summary judgment under Rule 56 of the Superior Court Rules of Civil Procedure, arguing that the requested records were not exempt from disclosure pursuant to § 38-2-2(d)(1) of the APRA.

The parties were heard on their respective motions by a justice of the Superior Court on June 25, 1991. The justice denied defendants' motion to dismiss, granted plaintiffs' motion for summary judgment, and directed defendants to release the records sought in plaintiffs' complaint. The trial justice stayed his order for ten days to allow defendants to request a stay from this court.

Prior to the expiration of the ten-day stay, some confusion arose between the parties in respect to the exact records within the purview of the trial justice's order. The defendants contended that the order actually encompassed three separate and distinct groups of state employees. The distinction among the groups, they asserted, was critical to the issue of whether the lists were subject to disclosure under the APRA.

It appears from the record that at the time plaintiffs filed their suit in March 1991, the Governor had concluded that a particular group of state employees would receive layoff notices (list No. 1). The Governor, however, never implemented that first wave of contemplated layoffs. Subsequent discussions with labor unions representing affected employees resulted in pay cuts in lieu of the proposed layoffs.

Four months later, the Governor generated a second and different list of state employees who were in turn issued layoff notices (list No. 2). As a direct consequence of the Governor's action, in respect to list No. 2, a course of action ensued referred to in the labor community as the "bumping process." The bumping process allows employees receiving layoff notices to exercise their rights to displace fellow employees with less seniority and to accept lower-level positions within state government.

The record before us indicates that the bumping process was on-going at the time of the hearing before the trial justice, as well as at the time the parties argued before this court. Therefore, at the conclusion of the bumping process the third list will constitute the final group of employees who will actually be laid off from state employment (list No. 3). The defendants had difficulty determining to which lists the trial justice's order of disclosure applied.

The defendants sought leave of the Superior Court for clarification of the scope of the trial justice's order. A justice of the Superior Court heard the matter on July 10, 1991, and ruled that the order directed defendants to release not only the names of the state employees "who were laid-off" but also "whatever list [of contemplated layoffs] was in existence, though perhaps not acted upon in March." In addition to clarifying the original order, the justice allowed Rhode Island Council No. 94, AFSCME, AFL–CIO, and the Rhode Island Alliance of Social Service Employees, Local No. 580, to intervene as party-defendants in this matter pursuant to Rule 24 of the Superior Court Rules of Civil Procedure.[1] Thereafter, defendant-intervenors (defendants) filed a timely notice of appeal to this court.

This court has had several occasions in the past to interpret provisions of the APRA. In the case at bar the issue before us is straightforward. It is whether the trial justice erred in holding that the records subject to disclosure included both the list that identified the employees proposed to be laid off—but who were never, in fact, separated from state employment—as well as those employees who will be laid off at the conclusion of the bumping process.

On review of a summary judgment order, this court applies the same standards as the trial justice. *Lawrence v. Anheuser–Busch, Inc.*, 523 A.2d 864, 867 (R.I.1987). If our examination of the pleadings, affidavits and all other admissible evidence, viewed in the light most favorable to the party opposing the motion, reveals no genuine issues of material fact and if we conclude that the moving party was entitled to judgment as a matter of law, we shall uphold the trial justice's granting of summary judgment. *Pennsylvania General Insurance Co. v. Morris*, 599 A.2d 1042, 1043 (R.I.1991); *Violet v. Travelers Express Co.*, 502 A.2d 347, 349 (R.I.1985); *Commercial Union Companies v. Graham*, 495 A.2d 243, 245 (R.I. 1985).

Turning to the present case, we believe that the Rhode Island General Assembly, in enacting the APRA, enlarged the scope of the public's access to documents in the possession of government agencies. The stated purpose of the APRA is as follows:

1. The plaintiffs, in their brief, argue that the intervention was improperly granted because the APRA does not provide private parties with a reverse remedy to prevent disclosure. *See Rhode Island Federation of Teachers, AFT, AFL–CIO v. Sundlun*, 595 A.2d 799 (R.I.1991). For purposes of this opinion we shall assume, without deciding, that the trial justice acted properly in allowing the intervention of Rhode Island Council No. 94, AFSCME, AFL–CIO, and Rhode Island Alliance of Social Service Employees, Local No. 580, Service Employees International Union, AFL–CIO. We take this position since it does not affect the merits of the case and since permitting the intervention was of no perceptible prejudice to plaintiffs.

"The public's right to access to records pertaining to the policy-making responsibilities of government and the individual's right to dignity and privacy are both recognized to be principles of the utmost importance in a free society. The purpose of this chapter is to facilitate public access to governmental records which pertain to the policy-making functions of public bodies and/or are relevant to the public health, safety, and welfare. It is also the intent of this chapter to protect from disclosure information about particular individuals maintained in the files of public bodies when disclosure would constitute an unwarranted invasion of personal privacy." Section 38–2–1.

■ This court has long recognized that the underlying policy of the APRA favors the free flow and disclosure of information to the public. *Providence Journal Co. v. Kane*, 577 A.2d 661, 663 (R.I.1990); *Pawtucket Teachers Alliance Local No. 920, AFT, AFL–CIO v. Brady*, 556 A.2d 556, 558 (R.I.1989); *Hydron Laboratories, Inc. v. Department of Attorney General*, 492 A.2d 135, 137 (R.I.1985); *The Rake v. Gorodetsky*, 452 A.2d 1144, 1147 (R.I.1982). However, in recognizing that policy, we have also concluded that the Legislature did not intend to empower the press and the public with carte blanche to demand all records held by public agencies. *Kane*, 577 A.2d at 663; *Brady*, 556 A.2d at 558.

■ The defendants in the present case argue that the records ordered disclosed by the trial justice are not "public records" as that term is defined by § 38–2–2(d) of the APRA and by this court in *Kane* and *Brady*. We agree with respect to those employees designated on lists No. 1 and 2. However, we conclude that list No. 3 will be a public record when finalized, and therefore, plaintiffs are entitled to have access to the list when it is completed pursuant to provisions of the APRA.

Read consecutively, §§ 38–2–2(d) and 38–2–3 set forth the definition of a public record for the purposes of disclosure under the act and mandate that "all records maintained or kept on file by any public body * * * shall be public records and every person shall have the right to inspect and/or copy such records." Section 38–2–3(a). Embodied in § 38–2–2(d), however, are twenty-two categories of exceptions that were intended to limit the public's access when disclosure would reveal personal or confidential information about an individual. It should be noted, however, that although the legislative intent may have been to protect against the release of personal or confidential information, it implemented this intention by prohibiting the release of all records that would be identifiable to an individual person, whether or not such records might in another context be construed as either personal or confidential.

Pertinent to the case at hand is § 38–2–2(d)(1), as amended by P.L.1991, ch. 263, § 1 which exempts the following records:

"All records which are *identifiable* to an *individual* applicant for benefits, clients, patient, student, or *employee;* including, but not limited to, personnel, medical treatment, welfare, employment security, and pupil records and all records relating to a client/attorney relationship and to a doctor/patient relationship * * *; *provided, however, with respect to employees, the name, gross salary * * * and date of termination shall be public.*" (Emphasis added.)[2]

---

2. In July 1991 the Legislature amended G.L. 1956 (1990 Reenactment) § 38–2–2(d)(1) to make public certain information relating to employees. P.L.1991, ch. 263, § 1. Because that amendment was enacted after the complaint had been filed but prior to entry of summary judgment, the parties, in their briefs, strenuously argued the merits of prospective versus retrospective application of the APRA as amended. We shall not address the merits of those arguments in the present case. Today we are deciding the propriety of a declaratory judgment under which plaintiffs' right to the lists at issue will not come to fruition until a future date when the bumping process is complete. We recognize that the act was amended subsequent to the time plaintiffs filed their complaint in the Superior Court seeking access to the names of employees "who were being laid-off." At that time, no employees had actually been laid off from employment. Application of the pre-amended act, however, would result in plaintiffs' returning to the Superior Court when the layoff list is finalized at the conclusion of the bumping process. In the interest of judicial

■ In our determination of the employee lists that are subject to disclosure under the APRA, we are mindful that in disputes involving statutory construction this court serves as the final arbiter. *Monti v. Warwick School Committee*, 554 A.2d 638, 639 (R.I.1989); *Lawrence*, 523 A.2d at 872. In accomplishing the task of construing legislative intent, we must adhere to the settled principle of construction that when a statute is unambiguous on its face and expresses a clear and sensible meaning, we interpret the statute according to the plain and literal meaning of the language contained in the statute. *Rhode Island Federation of Teachers, AFT, AFL–CIO v. Sundlun*, 595 A.2d 799, 802 (R.I.1991); *Wilson v. Krasnoff*, 560 A.2d 335, 339 (R.I.1989); *In re Advisory Opinion to the Governor*, 504 A.2d 456, 459 (R.I.1986).

■ There is no question that pursuant to the APRA, plaintiffs are not entitled to have access to lists No. 1 and 2. First and foremost, § 38–2–2(d)(1) explicitly exempts from disclosure records identifying an employee. It is not until an employee has been terminated from his or her employment that the last proviso of § 38–2–2(d)(1) becomes operative and, in effect, authorizes the release of the names of those terminated employees to the public. The plaintiffs contend that a record that merely identifies an individual employee is insufficient for exemption under § 38–2–2(d)(1). They submit that the exemption applies exclusively to records revealing personal information relating to an identified employee. We disagree.

Recently, in *Pawtucket Teachers Alliance v. Brady* and *Providence Journal Co. v. Kane*, we considered the personnel-record exception to the APRA. In *Brady* a teachers' union sought access to records in the possession of the Pawtucket School Department. Those records would have revealed the results of a management study of school operations that specifically referred to the job performance of a school principal. *Brady*, 556 A.2d at 557. De-spite the fact that the report identified the school principal by name, the plaintiffs argued that the report should have been disclosed to the public because it did not reveal any confidential information about the principal. *Id.* at 559. We acknowledged that the APRA was enacted to enhance the public's access to government documents. Not to be overlooked, we stated, is the statute's dual purpose to "protect from public disclosure information which is highly personal and intimate in nature." *Id.* Because of widespread media coverage, the information contained in the report was a matter of public knowledge. However, it was the fact that the principal had been specifically identified in the report that exempted the record under § 38–2–2(d)(1). *Id.* We held that disclosure of the school department's report would have constituted the precise unwarranted invasion of the principal's privacy that the Legislature intended to guard against when it enacted the APRA. *Id.* In so holding, we further indicated that the plain language of the APRA required that the exemption set forth in § 38–2–2(d)(1) did not apply until a specific individual was identified in the record. *Id.; see also The Rake*, 452 A.2d at 1148.

Similarly in *Kane* the plaintiffs had requested access to government documents that would "uniquely identify state employees by name, address, and employee number." *Kane*, 577 A.2d at 661. The plaintiffs had also requested other specific information related to those identified employees, including their employment history and qualifications. *Id.* Without doubt, the information requested was clearly information normally contained in a personnel file. However, the salient aspect of the plaintiff's request, which rendered the documents exempt under § 38–2–2(d)(1), was that the documents in question identified specific state employees. Because the unambiguous terms of § 38–2–2(d)(1) exempt all records identifiable to an individual employee, the documents requested were not

economy, we shall decide the rights of the parties pursuant to the statute as amended at the

time of the rendering of this opinion.

defined as public records under the language of the act, and the plaintiffs were denied access to the documents. 577 A.2d at 663.

In denying access to the plaintiffs in both *Brady* and *Kane*, we set forth this court's interpretation in respect to the plain language of the provisions of the APRA. We shall not depart from that interpretation in the case at bar.

The unambiguous language embodied in § 38–2–2(d)(1) makes it unmistakably clear that the Legislature intended to limit the public's access not only to personal information contained in an employee's personnel file but also to any record that identified a particular employee. In the case at bar it is of no consequence, as plaintiffs contend, that the lists do not reveal personal, intimate, or embarrassing information about any employee. The plain and literal meaning of the words contained in the APRA, as well as the rules of statutory construction, guide us in our determination regarding lists No. 1 and 2. The fact that the lists relate to readily identifiable individual employees against whom no action has been taken regarding their employment status is sufficient to deny plaintiffs access to the lists under § 38–2–2(d)(1) as amended.

■ It is with the same guides of literal meaning and statutory construction that we conclude that plaintiffs are entitled to gain access to list No. 3 when it becomes final. Section 38–2–2(d)(1) as amended provides for disclosure of, among other information, employees' names and their dates of termination. The defendants argue that, even at the conclusion of the bumping process, those affected employees will only be "laid off," as opposed to "terminated." The defendants ask this court to construe the term "layoff" to mean that the employees, although not working and not receiving compensation for work performed, still maintain a relationship with the state and enjoy the right to recall. Therefore, they are not technically terminated from state employment. We do not agree with defendants' definition of a layoff. In the circumstances of this case the public is entitled to know the identities of those employees who will be indefinitely released from the state-government payroll. To adopt the definition of a layoff as propounded by defendants would certainly contravene the legislative intent of enhancing the free flow and disclosure of information to the public. The information, which will be available at the conclusion of the bumping process, is well within the purview of disclosure under the provisions of the APRA.

■ We agree with the plaintiffs' argument that the exemptions listed in the APRA are to be construed narrowly, "so as to further the legislative purpose of facilitating public access to governmental records." *Hydron Laboratories, Inc.*, 492 A.2d at 139. However, no public interest is served by disclosing the names of employees who have not been laid off from state employment. Any state employee named in a potential layoff list is entitled to his or her privacy until such time as that final action is taken which results in separation from state employment.

For the reasons stated, the judgment of the Superior Court is vacated. The papers of this case may be remanded to the Superior Court with directions to modify the judgment in accordance with this opinion to provide that a list of employees who are actually laid off will be made available to the plaintiffs.