**In re: NEW ENGLAND GAS COMPANY.**

No. 2002–279–M.P.

Supreme Court of Rhode Island.

March 5, 2004.

Paul J. Roberti, Providence, for Plaintiff.

Dennis J. Roberts, II, Providence, for Intervenor.

David A. Wollin, Providence, for Defendant.

Present WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

SUTTELL, Justice.

This case requires us to revisit the Access to Public Records Act (APRA), G.L. 1956 chapter 2 of title 38. On its face, the avowed purpose of the APRA is "to facilitate public access to governmental records which pertain to the policy making functions of public bodies and/or are relevant to the public health, safety, and welfare." Section 38–2–1. We also have held that the APRA provides a remedy only to those people who are denied access to public records; it does not provide a remedy to prevent public agencies from disclosing records. *See Pontbriand v. Sundlun,* 699 A.2d 856, 867 (R.I.1997); *Rhode Island*

*Federation of Teachers, AFT, AFL–CIO v. Sundlun,* 595 A.2d 799, 803 (R.I.1991). Discerning no reason to deviate from these principles, and as the General Assembly has not seen fit to provide such a remedy, we reemphasize the strong public policy expressed in the APRA in favor of public disclosure.

Here, New England Gas Company (New England Gas or the company) seeks to reverse an order of the Rhode Island Public Utilities Commission (PUC or the commission) denying New England Gas's request to keep documents that reveal expenses incurred during a labor dispute confidential. We affirm the commission's order.

### Facts and Procedural History

The present controversy arose when New England Gas filed a rate application with the PUC. *In re New England Gas Company Rate Filing,* docket No. 3401, 2003 WL 1563686. The rate case was resolved by a settlement agreement approved by the commission on February 28, 2003. Before the settlement, however, New England Gas and the United Steel Workers of America, Local No. 12431 (the union), became embroiled in a labor dispute when New England Gas locked out members of the union from their jobs at the company. That labor dispute ended in late May 2002. The only issue remaining from the PUC proceedings is whether certain documents that the commission ruled were not exempt from disclosure under the APRA should be made public.

In connection with the rate application, the commission issued discovery by means of data requests to New England Gas. In its fourth set of data requests, the commission sought responses to eight specific requests for information, three of which are the focus of this review. Those requests were as follows: [1]

"5. With regard to the work stoppage and contract dispute with Local 12431, please provide a worksheet *detailing* the amounts unpaid as a result of the work stoppage and contract dispute (i.e. salaries not paid, healthcare not paid, payroll taxes not paid, etc.). Please indicate the time frame covered by the response.

"6. With regard to the work stoppage and contract dispute with Local 12431, please provide a worksheet *detailing* the expenses incurred as a result of the work stoppage and contract dispute (i.e. additional security services, additional overtime for non-union employees, contract labor, legal, advertising, etc.). Please indicate the time frame covered by the response.

" * * *

"8. Please provide a copy of the analysis by Park Row Associates indicating expected health insurance expense increases in January 2003 * * *."

On April 25, 2002, New England Gas filed responses to all eight of the data requests, but sought confidential and proprietary treatment for its responses to requests 4–05, 4–06, and 4–08 pursuant to Rule 1.2(g) of the PUC Rules of Practice and Procedure.[2] In accordance with the

---

1. The commission's fourth data request issued on April 4, 2002, delineates the requested documents by the numbers 5, 6, and 8. In subsequent documents, however, the commission refers to the data requests using two numbers, the number of the set of requests, *i.e.,* 4, and the number of the data request within that set, *e.g.,* 4–05. Hereinafter, we

will refer to the data requests as 4–05, 4–06, and 4–08.

2. Rule 1.2(g) of the PUC Rules of Practice and Procedure provides in part as follows:

"*Public Information.*

"(1) Access to public records shall be granted in accordance with the Access to

commission's past practice, the presiding commissioner preliminarily granted the request for confidential treatment. On April 30, 2002, at a public hearing, the commission informed New England Gas that it would hear oral arguments from the parties on May 3, 2002, to decide whether New England Gas's responses to the commission's data requests should remain confidential and proprietary.

On May 2, 2002, New England Gas requested in a letter that a portion of the hearing be held in a forum closed to the public, arguing that it could not discuss the issue of confidentiality without disclosing the confidential financial information itself. Furthermore, New England Gas asserted that the requested financial information disclosed costs that were not recurring and unrelated to the underlying rate case;

hence, these costs would not be reflected in any future rate proceeding. Because those costs would not be borne by its customers, New England Gas contended that the requested information was not relevant to the rate proceeding.

In its letter on May 2, 2002, and again at the hearing on May 3, 2002, New England Gas asserted that the responses to the data requests were exempt from disclosure under the APRA pursuant to exemptions (B), (E), and (H) of § 38–2–2(4)(i).[3] New England Gas argued further that even if none of the data responses met the APRA exemptions, the commission must apply a balancing test[4] to determine whether the public interest in disclosure outweighs New England Gas's interest in keeping the information confidential.

Public Records Act, R.I.G.L. § 38–2–1 et seq. Except where the Commission directs otherwise, all pleadings, orders, communications, exhibits and other documents shall become matters of public record as of the day and time of their filing. Any claim of privilege shall be governed by the policy underlying the Access to Public Records Act, with the burden of proof resting on the party claiming the privilege.

"(2) Any party submitting documents to the Commission may request a preliminary finding that some or all of the information is exempt from the mandatory public disclosure requirements of the Access to Public Records Act. A preliminary finding that some documents are privileged shall not preclude the Commission's release of those documents pursuant to a public request in accordance with R.I.G.L. § 38–2–1 et seq.

"(3) Claims of privilege are made by filing a written request with the Commission. One copy of the original document, boldly indicating on the front page, 'Contains Privileged Information—Do Not Release,' shall be filed with a specific indication of the information for which the privilege is sought, as well as a description of the grounds upon which the party claims privilege. Nine additional copies in which the privileged information is redacted shall be filed with the Clerk. If a document is filed

electronically, it shall contain a statement that information has been redacted; however, the original document must be filed as delineated above.

"(4) The Clerk shall place documents for which privilege is sought in a secure, non-public file until the Commission determines whether to grant the request for privileged treatment.

"(5) Any person, whether or not a party, may apply to the Commission for release of the information, pursuant to the Access to Public Records Act."

3. These APRA exemptions read as follows:

"(B) Trade secrets and commercial or financial information obtained from a person, firm, or corporation which is of a privileged or confidential nature.
"* * *
"(E) Any records which would not be available by law or rule of court to an opposing party in litigation.
"* * *
"(H) Reports and statements of strategy or negotiation involving labor negotiations or collective bargaining." G.L.1956 § 38–2–2(4)(i).

4. See Providence Journal Co. v. Kane, 577 A.2d 661, 663–64 (R.I.1990).

In a written "Report and Order" issued on May 6, 2002, the commission granted New England Gas's request for confidentiality with regard to data request 4–08. The commission ruled that New England Gas's response thereto is a non-public document under § 38–2–2(4)(i)(B) because the disclosure of the requested financial information would substantially harm the competitive position of New England Gas in its future negotiations with third-party health care insurers.

In response to New England Gas's argument that the responses to commission data requests 4–05 and 4–06 were not relevant to the rate proceeding, the commission noted that New England Gas failed to object to the discoverability of the information on the basis of its relevancy as required by Rule 1.18(c)(3) of the PUC Rules of Practice and Procedure.[5] During the hearing, New England Gas agreed to release all but the last two lines of its response to data request 4–05, which gave totals for the itemized costs arising from the labor dispute. It argued, however, that the last two lines of its response to data request 4–05, as well as its response to data request 4–06, were exempt from public disclosure under the provisions of § 38–2–2(4)(i)(B), (E), and (H). The three commissioners unanimously found that the information did not fall within any of the exemptions set forth in the APRA.

New England Gas asserted that its responses should not be made public pursuant to § 38–2–2(4)(i)(B) because their disclosure would cause substantial harm to the company's competitive position in relation to the union. The commission denied the request, noting that § 38–2–2(4)(i)(B) "has not been interpreted to deem a labor union which is in dispute with its own company to be in competition with its own company." Secondly, New England Gas asserted that its responses were nonpublic under § 38–2–2(4)(i)(E) that exempts "[a]ny records which would not be available by law or rule of court to an opposing party in litigation." The commission ruled that this exemption did not apply because neither the National Labor Relations Board (NLRB) nor the rules of the NLRB "clearly prohibits [the union] from receiving information as to the costs and savings relating to a work stoppage." The commission further noted that New England Gas failed to object to the discoverability of the requests, and therefore the union, as a party to the proceeding, already possessed the information.

Thirdly, New England Gas argued that its responses should not be made public pursuant to § 38–2–2(4)(i)(H) that exempts from public disclosure "[r]eports and statements of strategy or negotiation involving labor negotiations or collective bargaining." In denying the request, the commission found that the intent of the APRA is to favor disclosure; therefore, the exemption should be construed narrowly. Accordingly, the commission refused to interpret "[r]eports and statements of strategy

---

**5.** Rule 1.18(c)(3) of the PUC Rules of Practice and Procedure provides:

"Objection to a data request in whole or in part on the ground that the request is unreasonable and/or the material is not relevant· or not permitted or required by law shall be made by motion filed as soon as practicable and in no event later than ten (10) days after service of the request. An oral objection may be made at a hearing when the Commission has allowed an oral data request. Objections shall include the portions of the data request objected to and shall detail the basis for the objection. The presiding officer shall thereupon determine the validity of the request and shall establish a date for compliance. The relevancy of a request shall be determined under the standards established for such determinations under Rule 26 of the Superior Court Rules of Procedure."

or negotiation" to include any report that may have an impact on strategy or negotiation.

In addition, the commission applied the balancing test established in *Providence Journal Co. v. Kane*, 577 A.2d 661, 663 (R.I.1990), to weigh the company's privacy interests against the public's interest in disclosure. The commission found that

> "[b]ecause [New England Gas] is a public utility regulated by this Commission, the public needs and deserves to know how ratepayer funds are being expended. This interest outweighs [New England Gas's] speculative argument that the release of the cost information contained in these data responses will somehow impact the negotiations between [New England Gas] and [the union]."

The commission chairman dissented with the majority in this regard, opining that "the damage to the New England Gas Company if this record is released at this time far outweighs the interest of the public in immediate disclosure."

The commission granted New England Gas a temporary stay of its order to afford the company adequate time to seek relief from this Court. One day after the commission issued its order on May 6, 2002, New England Gas petitioned this Court to issue a writ of certiorari to review the commission's decision pursuant to G.L. 1956 § 39–5–1. The company filed a corrected petition on May 9, 2002. The petition for the writ of certiorari was granted on June 20, 2002, by order of this Court. By that time, the labor dispute had settled and the lockout ended.

## Discussion

■ We begin our analysis by noting that this Court has "long recognized that the underlying policy of the APRA favors the free flow and disclosure of information to the public." *Providence Journal Co. v. Sundlun*, 616 A.2d 1131, 1134 (R.I.1992) (citing *Providence Journal Co. v. Kane*, 577 A.2d 661, 663 (R.I.1990); *Pawtucket Teachers Alliance Local No. 920, AFT, AFL–CIO v. Brady*, 556 A.2d 556, 558 (R.I.1989); *Hydron Laboratories, Inc. v. Department of Attorney General*, 492 A.2d 135, 137 (R.I.1985); *The Rake v. Gorodetsky*, 452 A.2d 1144, 1147 (R.I.1982)).

■ We also have made clear that the APRA provides neither a right to prevent the release of private information, *Pontbriand*, 699 A.2d at 867, nor a remedy to compel nondisclosure, *Rhode Island Federation of Teachers*, 595 A.2d at 802. We reached this conclusion after a careful analysis of legislative intent and an examination of federal case law decided under the analogous Freedom of Information Act (FOIA). *Pontbriand*, 699 A.2d at 867. The Supreme Court of the United States has held that the FOIA was designed to enlarge disclosure by public agencies and that "Congress did not design the FOIA exemptions to be mandatory bars to disclosure." *Chrysler Corp. v. Brown*, 441 U.S. 281, 293, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979).

■ Thus, the APRA exemptions, similar to those under the FOIA, allow public agencies to withhold documents, but do not require withholding. *See Tripp v. Department of Defense*, 193 F.Supp.2d 229, 238 (D.D.C.2002). Similarly, in *Rhode Island Federation of Teachers*, 595 A.2d at 802–03, we held that the APRA provides no remedy to compel withholding non-exempt information from the public:

> "The similarity between FOIA, as interpreted, and APRA is striking. In both instances the Legislature has cast the public official as the guardian of exempted material. His or her discretion in respect to disclosure cannot be challenged by a private party. As in the

case at bar, if a remedy is to be provided, it must be provided by the Legislature and not by the court.

"Our statute, like the Federal FOIA statute, is directed solely toward requiring disclosure by public agencies and does not provide a reverse remedy to prevent disclosure."

New England Gas argues that it is not seeking to use a so-called "reverse remedy" as an implied right of action under the APRA to prevent disclosure of information it provided to the PUC. On the contrary, it asserts that it is exercising its statutory right to seek review of an adverse ruling of the PUC denying its request for confidential treatment of information that it provided to the PUC, a request that New England Gas is expressly permitted to make under PUC Rules and Regulations.

Rule 1.2(g)(2) of the PUC Rules of Practice and Procedure provides in part, "[a]ny party submitting documents to the Commission may request a preliminary finding that some or all of the information is exempt from the mandatory public disclosure requirements of the Access to Public Records Act."

As Rule 1.2(g)(1) makes clear, "[e]xcept where the Commission directs otherwise, all pleadings, orders, communications, exhibits and other documents shall become matters of public record as of the day and time of their filing."

In accordance with the commission's past practice, New England Gas's request for confidential treatment was preliminarily granted by the chairman pending a determination by the full commission. A public hearing was held on May 3, 2002, as a result of which the commission ordered that data response 4–08 be deemed confidential, and that 4–06 and the last two lines of 4–05 be disclosed to the public. Thereafter, New England Gas filed a petition for writ of certiorari under § 39–5–1,

which provides in part, "[a]ny person aggrieved by a decision or order of the commission may, within seven (7) days from the date of the decision or order, petition the supreme court for a writ of certiorari to review the legality and reasonableness of the decision or order."

■ As noted above, few matters have been more squarely placed within the discretionary authority of a governmental agency or commission than determining whether its records should be deemed protected from public disclosure. As we said in *Rhode Island Federation of Teachers*, 595 A.2d at 802–03, the public official is the "guardian of exempted material" whose discretion in respect to disclosure cannot be challenged by a private party.

■ Although the commission's rules provide a mechanism for a party to a PUC proceeding to request a "preliminary finding" that some or all of the information it may have submitted to the commission is exempt from the mandatory public disclosure requirements of the APRA, neither the commission rules nor the APRA provide a remedy to that party to prevent disclosure once the commission determines the information is public.

The commission's rules concerning disclosure require it to consider public requests for records in its possession according to the provisions of the APRA. "Access to public records shall be granted in accordance with the Access to Public Records Act." Rule 1.2(g)(1). Moreover, even "[a] preliminary finding that some documents are privileged shall not preclude the Commission's release of those documents pursuant to a public request in accordance with R.I.G.L. § 38–2–1 **et seq.**" Rule 1.2(g)(2).

Thus, as the rules make manifest, a party may request only a "preliminary

finding" that submitted documents are exempt under the APRA; it has no ability under the rules to challenge the commission's decision to release the documents pursuant to a public request under the APRA.

■ We are led to the inexorable conclusion, therefore, that New England Gas is not an aggrieved party within the meaning of § 39–5–1. "It has been well settled by this court that one who seeks review in an appellate court must establish affirmatively that he is sufficiently aggrieved in order to acquire standing." *Newport Electric Corp. v. Public Utilities Commission,* 454 A.2d 1224, 1225 (R.I.1983) (citing *Newman–Crosby Steel, Inc. v. Fascio,* 423 A.2d 1162, 1167 (R.I.1980)). "It has further been stated that a person is so aggrieved by a judgment or order when such judgment or order results in injury in fact, economic or otherwise." *Id.* (citing *Rhode Island Ophthalmological Society v. Cannon,* 113 R.I. 16, 26, 317 A.2d 124, 129 (1974)).

In *Blackstone Valley Chamber of Commerce v. Public Utilities Commission,* 452 A.2d 931 (R.I.1982), we held that a chamber of commerce, an intervenor in three consolidated dockets filed by an electric utility company seeking rate increases, was not an aggrieved party "in the absence of resulting actual or threatened legal injury to it." *Id.* at 934 (quoting *Pittsburgh & West Virginia Railway Co. v. United States,* 281 U.S. 479, 486, 50 S.Ct. 378, 74 L.Ed. 980 (1930)). The chamber of commerce therefore lacked standing to seek review of a commission order in one of the dockets under § 39–5–1. *Blackstone Valley Chamber of Commerce,* 452 A.2d at 934.

Although *Blackstone Valley Chamber of Commerce* involved an intervenor in a commission proceeding, we find the reasoning no less persuasive when applied to a party to a proceeding. *See id.* Here, New England Gas essentially seeks to enforce a right to which it is not entitled. It has not, and cannot, demonstrate any injury under either the APRA or the commission's rules that merely implement the provisions of the APRA. The APRA provides neither a right nor a remedy to prevent the disclosure of public records.

■ As we conclude that New England Gas is not an aggrieved party, this Court is without subject-matter jurisdiction to review the commission's order pursuant to § 39–5–1. Unless all the prerequisites of a jurisdictional statute have been met, a petition must be dismissed for lack of subject-matter jurisdiction. *See Bradford Associates v. Rhode Island Division of Purchases,* 772 A.2d 485, 489–90 (R.I. 2001). Consequently, New England Gas's assertion that the commission has waived any lack of jurisdiction argument is unavailing. "A challenge to subject-matter jurisdiction questions the very power of the court to hear the case. It * * * may not be waived by any party and may be raised at any time in the proceedings." *Pine v. Clark,* 636 A.2d 1319, 1321 (R.I.1994).

### Mootness

■ New England Gas's challenge to the commission's order also fails by reason of mootness. "This Court has consistently held that a case is moot if the original complaint raised a justiciable controversy, but events occurring after the filing have deprived the litigant of a continuing stake in the controversy." *Cicilline v. Almond,* 809 A.2d 1101, 1105 (R.I. 2002) (per curiam) (quoting *Associated Builders & Contractors of Rhode Island, Inc. v. City of Providence,* 754 A.2d 89, 90 (R.I.2000) (per curiam)). Not only has the rate case settled, but the labor dispute has settled as well. We reject New England

Gas's claim that it has a continuing stake in a controversy that no longer exists.

■ We recognize that this Court will review an otherwise moot case when the issues raised are "of extreme public importance, which are capable of repetition but which evade review." *Cicilline*, 809 A.2d at 1105–06 (quoting *Sullivan v. Chafee*, 703 A.2d 748, 752 (R.I.1997)). Matters that are deemed to be "of extreme public importance[,]" however, usually implicate "important constitutional rights, matters concerning a person's livelihood, or matters concerning citizen voting rights." *Id.* at 1106 (quoting *Associated Builders*, 754 A.2d at 91).

■ Assuming, *arguendo*, that New England Gas's responses to data request 4–06 and the last two lines of 4–05 fell within one of the APRA exemptions, the release of such information may well have been a matter concerning the livelihoods of many persons—but only during the pendency of that particular labor dispute. Once the labor dispute was settled, the only impact that disclosure could have was purely speculative in nature.

Indeed, as New England Gas submitted, "dissemination of New England Gas'[s] expense information could have a significant adverse impact on its position in *future* labor disputes with the [union] and other unions." We do not believe that this is a "matter of extreme public importance," which is capable of repetition, yet evades review. In this case, when the labor dispute was settled, New England Gas's petition for relief from the commission's order was still pending before this Court. Arguably, the matter of extreme public importance was the public and ratepayers' interest in knowing how the utility's financial condition might affect the rate case. Blocking the disclosure of a public utility's financial information relating to a settled labor dispute, within the context of a set-

tled rate case, simply does not rise to such a level.

We conclude, therefore, that New England Gas's petition for writ of certiorari became moot when the labor dispute ended.

Finally, we note that New England Gas so much as acknowledged this point at the hearing on May 3, 2002, when the following dialogue took place:

"MR. ROBERTI [Counsel for the commission]: If you were to seal—make a decision to seal this from the public today and the lockout ended Monday, would you then make a determination that the public could now see that information?

"MR. KEEGAN [Counsel for New England Gas]: I don't think we'd have an objection at that point in time."

### The APRA Exemptions

■ Even if we were to deem New England Gas to be an aggrieved party and this case not to be moot, we would affirm the commission's order. Our standard of review in PUC matters is strictly prescribed by § 39–5–3, which directs that "[a]n order or judgment of the commission made in the exercise of administrative discretion shall not be reversed unless the commission exceeded its authority or acted illegally, arbitrarily, or unreasonably." Clearly, the determination of whether these particular responses to data requests should be protected from public disclosure was within the discretionary authority of the commission.

In this case, not only did all three commissioners agree that the responses to the data requests did not fall under any of the exemptions to the APRA, but also the majority found that the public's interest in receiving the information outweighed New

England Gas's interest in not disclosing it.[6] We agree.

The policy underlying the APRA "is to facilitate public access to governmental records which pertain to the policy making functions of public bodies * * *." Section 38–2–1. The PUC employs this policy when entertaining arguments that information submitted to it in rate cases should remain confidential. Rule 1.2(g)(1) provides that "[a]ny claim of privilege shall be governed by the policy underlying the Access to Public Records Act, with the burden of proof resting on the party claiming the privilege." In accord with the APRA's policy favoring disclosure, we previously remarked, "the exemptions listed in the APRA are to be construed narrowly, 'so as to further the legislative purpose of facilitating public access to governmental records.'" *Providence Journal Co.*, 616 A.2d at 1136 (quoting *Hydron Laboratories, Inc.*, 492 A.2d at 139).

The commission considered New England Gas's request to keep the responses to data requests confidential in light of the APRA policy and the concomitant directive to construe the APRA exemptions narrowly. In its "Report and Order," the commission rejected New England Gas's invitation to construe the APRA exemptions broadly. The commission explicitly considered the APRA policy in applying the exemptions and found that the New England Gas responses did not qualify. We cannot find anything illegal, arbitrary, or unreasonable in its decision.

 New England Gas argues that its data responses are exempt from public disclosure as "commercial or financial information obtained from a person, firm, or corporation which is of a privileged or confidential nature" pursuant to § 38–2–2(4)(i)(B).

 We previously have defined as confidential "any financial or commercial information whose disclosure would be likely either '(1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.'" *Providence Journal Co. v. Convention Center Authority*, 774 A.2d 40, 47 (R.I.2001) (quoting *National Parks and Conservation Association v. Morton*, 498 F.2d 765, 770 (D.C.Cir.1974)).

The first prong of the inquiry is unavailing to New England Gas. Within the context of a rate hearing case pending before it, the commission may obtain the information through its subpoena power under G.L.1956 § 39–1–13. With respect to the competitive injury prong, the commission found no authority for the proposition that a labor union can be in competition with its own company. Again, we find nothing illegal, arbitrary, or unreasonable in the commission's finding.

New England Gas further asserts that commercial or financial information provided on a voluntary basis is confidential for the purposes of exemption "if it is of a kind that would customarily not be released to the public by the person from whom it was obtained." *Providence Journal Co.*, 774 A.2d at 47 (quoting *Critical Mass Energy Project v. Nuclear Regulatory Commission*, 975 F.2d 871, 879 (D.C.Cir.1992) (en banc)). The commission did not address this issue in its "Report and Order." Again, however, within the context of a rate hearing case pending before the PUC, information provided in response to the

---

6. Even the dissenting commissioner clearly indicated that he dissented from the decision to release the information only "at this time" noting that the "public will suffer little or no harm if the release of this record is delayed temporarily."

commission's data requests cannot fairly be deemed to have been provided on a "voluntary basis."

 Subsection 38–2–2(4)(i)(E) exempts "[a]ny records which would not be available by law or rule of court to an opposing party in litigation." New England Gas, however, does not cite any "law or rule of court" that would prohibit the discovery of such information in appropriate litigation. Moreover, New England Gas failed to seek a protective order under Rule 1.18(e) of the PUC Rules of Practice and Procedure.[7] The commission was not acting "illegally, arbitrarily or unreasonably" in ruling that this exemption did not apply.

 New England Gas further contends that the responses are exempt as "[r]eports and statements of strategy or negotiation involving labor negotiations or collective bargaining" under § 38–2–2(4)(i)(H). Although we acknowledge that the word "strategy" may be interpreted broadly to encompass the implementation of a plan concerning labor negotiations within the context of § 38–2–2(4)(i)(H), we do not believe that the commission committed error by refusing to adopt such an interpretation in this case. We also recognize that, in an appropriate circumstance, expenses incurred during the course of a labor dispute may be construed as part and parcel of the implementation of a strategy. That is not the case here, however.

The information that New England Gas sought to be protected reflects the financial effects of the strategy, not its implementation. Although the argument can be made, and indeed one commissioner agreed, that such information ought to be protected from public disclosure under the balancing test because the damage to New England Gas outweighed the interest of the public in disclosure while the labor dispute was pending, the information does not squarely fall within § 38–2–2(4)(i)(H).

On a previous occasion when a company attempted to keep financial reports from public disclosure, we remarked that a party seeking to have a document come within a specific exemption set forth in § 38–2–2 must carry a "heavy burden of proof." *Charlesgate Nursing Center v. Bordeleau,* 568 A.2d 775, 778 (R.I.1990). New England Gas enjoyed its full complement of procedural safeguards in front of the Public Utilities Commission. The company argued its case for keeping the requested information from the public, but was unsuccessful. The commission considered the applicability of the APRA exemptions and found that the exemptions did not apply to the company's responses to the data requests. The commission presented its reasons for its findings and applied the policies of the APRA pursuant to its Rules of Practice. *See* Rule 1.2(g). The commission's findings are reasonable in light of the evidence presented. We see no ground on which to find that the commission exceeded its authority or acted illegally, arbitrarily, or unreasonably.

In *Charlesgate Nursing Center,* 568 A.2d at 776, a nursing home involved in a labor dispute sought to keep from public disclosure a report detailing payroll and

---

7. Rule 1.18(e) reads:

 "*Protective Orders.* Upon motion by a party from whom discovery is sought, and for good cause shown, the presiding officer may make an order when justice requires to protect the party from unreasonable annoyance, embarrassment, oppression, burden or expense, or from disclosure of confidential business and financial information. If the motion for a protective order is denied in whole or in part, the presiding officer may order that the party provide or permit discovery."

tax information, wage and salary expenses, a depreciation schedule, a statement of operations, an interest and indebtedness schedule, and a balance sheet showing a statement of the facility's financial condition compared to the previous year. We affirmed the Superior Court's judgment that the report was not exempt under the APRA because "the General Assembly has presumably determined in its wisdom that *the benefits of making such information public outweigh the disadvantage* that may accrue to those who have a subjective desire to keep the material private and confidential." *Id.* at 778. (Emphasis added.)

 Here, the commission explicitly weighed New England Gas's privacy interests in keeping the responses confidential against the public's interest in disclosure according to the balancing test in *Providence Journal Co.*, 577 A.2d at 663. The commission weighed the interests as follows:

"In this case, the information contained in data responses 4–06 and 4–05 relate to how much and in what manner ratepayer funds are being expended by [New England Gas] during the work stoppage. Because [New England Gas] is a public utility regulated by this Commission, the public needs and deserves to know how ratepayer funds are being expended. This interest outweighs [New England Gas's] speculative argument that the release of the cost information contained in these data responses will somehow impact the negotiations between [New England Gas] and [the union]."

We find no fault with the commission's reasoning, which is now even more compelling in light of the fact that the labor dispute has ended.

In its petition, New England Gas argues that the balancing test should prohibit disclosing its financial information to the union because disclosure could be damaging to New England Gas's future negotiations. The commission is correct to call this argument "speculative." Moreover, we agree with the commission that the public's need to know how a utility company spends ratepayer money during a labor dispute greatly outweighs the potential harm to the company vis-á-vis a labor dispute. The strong interest of the public, and ratepayers in particular, in knowing what impact the costs a public utility incurs in a labor dispute may have on its rate filing is unassailable.

## Conclusion

Accordingly, we affirm the commission's order denying New England Gas's request to keep the aforementioned documents confidential. The papers in the case may be returned to the commission.